Mason et al. v. Sieglitz.

1. Appellate Practice.

An objection that the bill of exceptions was not properly authenticated will not be considered if not made in apt time, particularly when the bill has been treated by both parties as though it had been properly signed and was otherwise unobjectionable.

2. Partnership—Intention.

Intention of the parties is material in determining whether a partnership exists *inter sese* and even as to third persons, but it is not necessarily decisive of the question, especially when the language of the agreement is inconsistent with such intention.

3. Same—Action Between Partners.

When a partnership was limited to a single item or transaction, one member may maintain an action at law against his copartner to recover his portion of the proceeds of the joint venture.

4. Instructions.

Instructions should be numbered and signed by the counsel requesting them. A failure to comply with this requirement may justify their refusal.

5. New Trial.

In the absence of an order extending the time, a motion for a new trial must be filed within five days after verdict.

6. Measure of Damages.

Parties who have converted a fund belonging to another to their own use, each taking a part, are liable for the whole amount, and to verdict and judgment accordingly.

*Appeal from the District Court of Arapahoe County.*

The plaintiff in this case was F. P. Sieglitz; the defendants were James F. Mason, Thomas S. O'Neal, and the Colorado National Bank. The complaint alleges that on the 12th of July, 1889, the plaintiff, the defendant Mason, and one C. E. Moorman, made a joint agreement in writing, the purport of which was that if through their instrumentality a sale was made of the Brush-Heap mining property in New Mexico, these three parties were to share equally in the commissions of said sale. The details in effecting the sale were intrusted by the plaintiff and Moorman to Mason, and a sale

was made from which the sum of $8,000 accrued to them as commissions, one third thereof to each of them.

Mason, contrary to the agreement, and in violation of his duty to those jointly interested with him, directed that the said sum of $8,000 should be deposited with the defendant bank in the names of Mason and O'Neal; that about $4,000 of said amount has been paid through said bank to Mason and O'Neal; and that the sum of $4,200, at the time of filing the complaint, was due and payable to the bank, and that Mason had no authority to dispose of any portion of said commission, except that belonging to himself; and that the disposition which he did make of the interest of Moorman and plaintiff therein was with the intent to defraud the plaintiff; that O'Neal never had any interest or share in such commissions; that the plaintiff has acquired the interest of Moorman in said commission. Judgment is asked on behalf of the plaintiff for two thirds of the commission of $8,000.

The defendant bank filed its answer, admitting that it had in its possession the sum of $4,250, which subsequently, by agreement of parties, was paid into court to abide the judgment in this case, and the case against it was dismissed.

O'Neal and Mason filed separate answers, in most particulars denying the allegations of the complaint; Mason alleging that he makes no claim upon the fund which is held by the bank; the answer of O'Neal containing a like disclaimer as to himself, and alleging that the money in bank belongs to George F. Moore and John A. Heames as their share of commissions upon the sale of the property which, it is claimed by both O'Neal and Mason, was made, not by the plaintiff, nor by him, Mason and Moorman under the joint agreement which is set out in the complaint, but by O'Neal, through, and with the assistance of, Moore and Heames, to Moore and Heames themselves and certain other parties in the city of Detroit.

Subsequently Heames and Moore filed their joint petition of intervention herein, alleging that neither is the plaintiff nor are the defendants entitled to the money which is in the

bank, as commissions or otherwise; but they allege that in the month of March, 1890, they entered into an understanding with O'Neal to sell said Brush-Heap mines, and that the three did effect the sale thereof in May, 1890. The commissions upon the sale were to be divided, one half going to O'Neal, and one half to the intervenors; that O'Neal has received his share of the commissions, and that the fund now in bank belongs to them.

There was a replication filed by the plaintiff to, and denying, the affirmative matters in the two answers and the affirmative matters in this petition of intervention.

Upon the issues thus joined, trial was had to the court with a jury, and a verdict was returned in favor of the plaintiffs against the intervenors and the defendants, upon which judgment was entered. It is from this judgment that defendants Mason and O'Neal and the intervenors appeal, there being no judgment against the bank.

Mr. W. C. KINGSLEY, for appellants.

Messrs. STUART & MURRAY, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

It will be seen that both defendants disclaim any interest in the fund which the plaintiff seeks to recover, although in their answers they aver that it belongs to the intervenors. The real controversy is between the plaintiff and the intervenors. The issue, as tried, and as all of the parties to this controversy consider it, was: Have the defendants and the intervenors, or any of them, fraudulently appropriated and converted to their own use money belonging to the plaintiff?

The claim of the plaintiff is that this fund constitutes a part of the commissions earned by him, Moorman and Mason, in carrying out their joint agreement in effecting the sale of the Brush-Heap mining property, which fund the defendants and the intervenors have converted to their own use.

The claim of the defendants and the intervenors is that this fund is that portion of the commissions belonging to the intervenors—O'Neal having received his share—which was earned by O'Neal and intervenors in perfecting the sale of this same property, with which sale plaintiff had nothing to do, and in which fund he has no interest. There is some question as to the proper authentication of the bill of exceptions, and as to whether it contains all the evidence submitted to the jury; but as no seasonable objection has been interposed by appellee, and as both he and the appellants have made copious abstracts of the record and of this bill of exceptions, and filed their briefs and argued the case as though the bill of exceptions had been properly preserved and signed and that it contained all the evidence, we will proceed to dispose of this case upon its merits.

The record, including this bill, abounds with reasons for the affirmance of the judgment. The evidence in this case, though contradictory upon nearly every point, tended to show that an agreement in writing was executed by the plaintiff, Mason and Moorman, providing that in case plaintiff secured control of the Brush-Heap mine for ninety days, and a sale was effected by the parties to the contract, whatever was earned as commissions should be equally divided between them.

The plaintiff secured from Elliott and Forbes, the owners of the mines, an option for a certain time, and when that time expired without a sale, the owners consented to an extension, which continued until the mines were sold, the three parties to the contract from the date of its execution continuing their efforts in various ways to make the sale. Mason was intrusted with the details of the negotiations, and subsequently plaintiff purchased Moorman's rights and interests under the contract.

After this joint agreement was executed, the intervenors Heames and Moore, or one of them, went to New Mexico to examine other properties, and while there, and through the instrumentality of Mason, they met O'Neal, and through

O'Neal and Mason this Brush-Heap property was brought to the attention of intervenors, and negotiations for a purchase then were entered upon, which subsequently ripened into a sale to them and their associates.

In making this sale, reports, assays, maps, and various other data calculated to facilitate the sale of mines, furnished and prepared by the plaintiff and at his expense, were used by O'Neal and Mason in effecting this sale. O'Neal seemed to be the active spirit in the matter, and some time in the month of May, 1890, intervenors, for themselves and associates, bought this property, and paid $160,000 therefor, of which $10,000 were for commissions to the brokers.

At first the intervenors intended to take this property for themselves alone, but the time given for the first payment upon the purchase price was so short they were obliged to admit into the purchasing syndicate some of their confiding friends in Detroit.

O'Neal, by his own admissions, occupied a double relation in the transaction, as an assumed agent of the vendors, and an undoubted agent of Heames and Moore, who were acting for themselves and ostensibly for their associates. In each of these capacities O'Neal demanded and received compensation for his services; from the purchasers he has received commissions amounting in value to nearly $10,000. Of the total commission of $10,000 allowed by the owners of the property to the brokers for their services, about $1,500 went for extras, the nature of all of which the evidence, for obvious reasons, does not disclose, and about $8,500 were left for the brokers, of which O'Neal has received his share, having, as he says, given as a gratuity some of it to Mason, although he protests that Mason was not of any particular value in the negotiations; and one half is now the fund in the bank over which the present controversy is being waged, and which the intervenors claim as their own.

For prudential reasons the intervenors did not want their associates to know that they were receiving from the vendors commissions upon the sale of the property to themselves as

vendees; hence this fund was placed in the bank, as they and O'Neal say, to O'Neal's credit, but really in trust for intervenors.

There are many other interesting bits of evidence in this case showing the peculiar nature of the transaction, but they are not material in the decision of the questions presented for determination. It should be said, generally, that there was sufficient evidence in this case for the jury to find that the sale of this property was made to the intervenors by Mason, and through his efforts, acting for himself and his associates under the contract set forth in the complaint; that defendant O'Neal and the intervenors well knew of the contract and of plaintiff's rights, and knew Mason was acting for himself and his associates. O'Neal was unquestionably acting as the agent of the purchasers, and this plan of defendants and intervenors to claim from the vendors the commission for the sale to the exclusion of plaintiff was an afterthought. Through the fraudulent conduct of the defendants and the intervenors, they have attempted to convert, and have converted, this fund in controversy to their own use, and that such fund belongs to the plaintiff.

The defendants and intervenors submitted to the jury eleven special interrogatories as to various matters involved in the case, all of which were answered against them, and in favor of the plaintiff, and all of these answers have support in the evidence. In the light of the foregoing summary of the evidence, we proceed to consider such of the errors assigned as we think properly raised.

1. It is said that this action cannot be maintained for the reason that the complaint shows that there was a partnership between the parties to this agreement, and that one partner cannot sue another for a debt growing out of a partnership transaction, but that the proper action is one for a dissolution of the partnership, and for an accounting.

We do not find that this objection was properly taken by the appellants at either trial, and we might for this reason properly refuse to consider it here. But the agreement in

this case related to a single transaction. The parties to it evidently did not intend to form a partnership, and the profits of the transaction were in no sense to be applied to their joint account, but one third of whatever profit was obtained went to each one of the parties separately. The intention of the parties is not necessarily decisive, particularly when the language of the agreement is inconsistent with such intention ; but the intention of the parties is always very material in determining whether or not a partnership *inter sese* exists, and even as to third parties. We do not consider that the agreement as to the commissions for this sale con- stituted the parties partners. See 1 Chitty on Contracts (11th Am. ed.), 320, and notes; 1 Lindley on Partnership, 18; 17 Am. & Eng. Ency. of Law, 857; *Wheeler v. Arnold,* 30 Mich. 304; *Wass v. Atwater,* 33 Minn. 83.

But if there was a partnership, there being but one item unadjusted, the kind of action brought by the plaintiff would lie at common law; and under the code, there being but one form of civil action, if the facts set up in the complaint enti- tle the plaintiff to any kind of relief, if the evidence warrants it, such relief will be awarded. *Wann v. Kelly,* 5 Fed. Rep. 584; *Wheeler v. Arnold, supra ; Meason v. Kaine,* 63 Pa. St. 335; *Sikes v. Work,* 6 Gray, 433 ; *Pettingill v. Jones,* 28 Kan. 749; *Galbreath v. Moore,* 2 Watts, 86; *Buckner v. Ries,* 34 Mo. 357.

There is nothing in this contention.

2. A large number of authorities are cited to the propo- sitions that the case must be proved as stated in the com- plaint; and that if there is a material variance between the allegations of the complaint and the proof, though some other case is made entitling the plaintiff to relief, the judgment, nevertheless, should be for the defendant. This, it may be said, is the general rule, the exceptions to which need not be noticed ; for the alleged variance in this case, viz., that whereas a certain written agreement for commissions is al- leged, the only proof is of a verbal agreement, does not exist. The evidence clearly shows that there was a written contract

upon which plaintiff's rights rest, and that it is the one set
out in the complaint.

In this connection the point is made that this agreement
was limited to ninety days,—which is not the proper inter-
pretation,—and that the sale of the property was not made
until after the expiration of that time.    These facts, it is said,
show that the sale, if made by Mason, either alone or through
others, was not under this agreement at all; but if made by
him, Moorman and the plaintiff, it was in pursuance of a
verbal agreement, which defeats the action, in the one case,
because of an entire absence of proof, and in the other, because
of a fatal variance.

But this is not tenable.    On the contrary, this agreement
is not limited to ninety days, and the evidence shows that
the owners of this property extended the option given by
them to these joint contractors; and the latter, without and
change or variation from their written agreement, continued
their efforts to make the sale, and accomplished it after the
expiration of the ninety days.    This voluntary action of the
parties prolonged their written agreement, and their subse-
quent actions are controlled by its terms, whether or not this
agreement constituted a partnership.    2 Lindley on Partner-
ship, *p. 823; 1 Bates on Partnership, sec. 216; *Bradley v.
Chamberlin*, 16 Vt. 613; *Sangston v. Hack et ux.*, 52 Md.
173; *Jacksonville, etc., R. R. Co. v. Woodworth*, 8 Southern
Rep. (Fla.) 177; *Stevens v. Ross*, 11 Atl. Rep. (N. J. Ch.)
114.

3. There are numerous errors assigned to the giving and
refusing of certain instructions.    Assuming that objections
were seasonably interposed by the appellants to such rulings,
we find that those refused were not signed or numbered by
counsel, and the court, in the exercise of a wise discretion,
might have refused them for this failure to observe the pro-
visions of the statute in that respect.    *Orman v. Mannix*, 17
Colo. 564.

These instructions, however, were properly refused because
they did not state the law.    Upon these assignments we may

say, generally, that the instructions given by the court are in harmony with the conclusions reached by us on each branch of the case. If, however, there was any error in the refusal of the instructions asked by appellants, there was no prejudicial error, as the jury, in answer to the special interrogatories submitted by appellants, found, as against them, that the facts did not exist to which such instructions were applicable. *Louisville & N. R. R. Co. v. Orr*, 84 Ind. 50; *Whitewater R. R. Co. v. Bridgett*, 94 Ind. 216; *Worley v. Moore*, 97 Ind. 15.

4. It is urged that the court erred in overruling the motions for a new trial. We think that all of the grounds embraced in these motions, which have any merit at all, have otherwise been assigned for error, and disposed of in this opinion; but, if not, the appellants are not in a position to press such objections, because these motions were not filed within the five days required by the code, and not until twelve days after the date of the verdict. Code of 1887, sec. 218.

5. It is said, also, that the written option from the owners to the plaintiff and his associates was signed only by Elliott, one of the owners, and by him as attorney in fact for the other owner, without any authority being shown for the exercise of such power. We fail to appreciate what difference this makes to the appellants, or what right they have to insist upon the supposed defect. The evidence, however, sufficiently shows that Forbes knew of this act of Elliott, subsequently ratified it, and knowingly accepted the fruits of the option.

6. The general verdict in the case was for $4,250 in favor of the plaintiff against both of the defendants and both intervenors. Of this the appellants complain, and say that, if the verdict and special findings were correct, there should not have been a judgment against any of these parties for any larger sum than the evidence shows was received and appropriated by each; and as the evidence showed that Mason and O'Neal had each received about $2,600, there should have been judgment against each one of them only for such amount.

They further maintain that the judgment for the amount of this fund should have been against the bank, and that no judgment for any amount should have been entered against the intervenors.

Whatever merit there might be to this contention as an abstract proposition, the facts in this record show that the judgment as rendered is right. *First.* As found by the jury, the two defendants and the two intervenors, by their joint action, have converted this fund of the plaintiff to their use, and put it beyond the power of the plaintiff to obtain it except by a suit. For this act each of them is liable. *Second.* The bank deposited the $4,250 in court in consideration of being released from the action, and such release was given. By a stipulation made before the first trial in November, 1890, upon the execution by appellants of a bond with sureties to the plaintiff to pay whatever judgment might be rendered against them, this fund, so paid into court by the bank, was paid over to the appellants and they have had the use of it ever since. After the final judgment was rendered, difficulty was encountered by appellants in securing an appeal bond, and the sureties who signed the bond, just mentioned, to respond to whatever judgment was rendered, refused to sign an appeal bond until the other bond was surrendered. Thereupon a stipulation was signed by appellee and appellants, by the terms of which the appellee consented to the canceling of the former bond, which was done, and the appeal bond was thereupon executed and approved.

To hold now that this judgment should be reversed because of this objection, interposed for the first time here upon this appeal, would be a gross wrong to the appellee; for, if a reversal on this or any other ground should be had, he would lose not only the benefit of his appeal bond, but he would lose the security of the former bond given to respond to his judgment, which he released as an accommodation to the appellants, and he would lose all recourse against the bank, which was released from the action upon its payment

of the fund into court. This objection is entirely without merit.

We have carefully examined the voluminous record in the case and find that substantial justice has been done. There are some other specifications of error urged, though not argued at length, or at all, but we find no prejudicial error. The judgment should be affirmed, and it is so ordered.

*Affirmed.*