No. 16,439.

MORRIS *v.* REDAK.
(234 P. [2d] 908)

Decided June 25, 1951. Rehearing denied July 30, 1951.

28

Mr. FREDERICK E. DICKERSON, Mr. ANTHONY F. ZAR-
LENGO, Mr. FRAZER ARNOLD, Mr. ARNOLD WEINBERGER, for
plaintiff in error.

Mr. EDWIN P. VAN CISE, Mr. PHILIP S. VAN CISE, for
defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared
in the trial court, where defendant in error was plaintiff
and plaintiff in error was defendant.

In plaintiff's complaint, he alleged, in substance, that defendant, who is an architect, and one E. B. Jones, a contractor, desired to bid on a United States contract for certain construction work at Buckley Field. They needed financial backing and defendant solicited plaintiff to provide it. Plaintiff further alleged that an oral contract and agreement was entered into between himself and defendant, under which he was to receive one-third of the net profits realized upon the said construction contract in consideration for the financial backing provided by himself and those associated with him. It also was alleged in the complaint that the total profit realized upon performance of said contract was $183,359.73 plus equipment valued at $2,576.31.

Plaintiff further alleged that the sum of $27,033.39 was received by him, and that he is entitled to receive the difference between said sum and one-third of the total net profit resulting from performance of said contract. He also alleged that defendant breached the oral contract between himself and defendant in the following particulars: "(a) In not paying plaintiff the balance due him of $34,086.52. (b) In employing Robert M. Morris at a salary greater than $500.00 a month, without the consent of plaintiff, said amount so paid being $7,781.90, at the rate of $1,000 a month from June 26, 1942 to December 31; January 1 to March 5, 1943 at $150.00 per week, and May 31, $300.00, together with unauthorized extras of $5,010.00. (c) In not submitting to plaintiff a correct report of the operations of the project to show the share of plaintiff and his associates. (d) In not promptly delivering the books to Atler for audit in 1943 when the job was completed. (e) In not giving plaintiff a list of personal property acquired under the contract, and not delivering to plaintiff his 1/3 thereof. (f) Without the approval of plaintiff, paying himself unauthorized expenses for his personal car and alleged travel of at least $440.00, one-third of which should be paid to plaintiff."

Plaintiff prayed judgment for one-third of the profits, for interest, for one-half the sum charged by an auditor who audited the books relating to the construction job, and for costs.

In his answer defendant set forth two defenses, the first of which consisted partly of admissions and partly of denials of matters alleged in the complaint. In his second defense he alleged that plaintiff's contract with him called for only a one-fourth interest in the net profits accruing from said construction contract, and that the balance due plaintiff upon this alleged one-fourth interest was the sum of $19,647.87.

In paragraph 3 of said second defense it is alleged: "Defendant hereby tenders to the plaintiff and is ready, able and willing to pay to the plaintiff at this or any time the full balance in said sum of $19,647.87, shown in said Exhibit A hereto attached." Defendant prayed that plaintiff be required to accept and receive said tendered sum in full settlement and discharge of his claim and demand.

A pretrial conference was held at which the issue to be determined was stipulated and agreed to be as follows: Was the plaintiff entitled to one-third of the net profits plus the following items: "(a) One-third of the amount paid Robert M. Morris over $500 per month or an alleged total of $8,691.90 overpayment. (b) One-third of $440 charged as car expense on the project by Earl Morris. (c) One-third of alleged $500 attorney fee paid for services rendered the project and which it is stipulated the same was paid. (d) One-third of $1,298.00 office salaries paid, and that proof be required of such payment. (e) One-third of transportation charge of $285, and that proof be required of such payment"?

Plaintiff accepted the statement of defendant that, subject to the determination of the foregoing issues, the net profit derived from the project was $185,555.99 which was reflected by the books kept by the auditor Dolberg,

in which no recognition was given to the claims of plaintiff in those matters reserved for trial to the court.

By stipulation between the parties the case was divided into two parts for trial, the first of which involved the question as to whether the interest of plaintiff was one-third or one-fourth of the net profits. In connection with this issue the record discloses a further stipulation in the following words: "It is stipulated between counsel that the only issue in the case to be submitted to the Jury is whether the oral contract is a one-third interest or one-fourth interest of Redak, and that all the other issues will be passed upon by the Court."

February 26, 1949, the jury returned a verdict in the following form: "We, the jury, find that the contract between the plaintiff, R. H. Redak, and the defendant, Earl Chester Morris, was that the plaintiff, Redak, was to receive one-third of the profits from the Buckley Field project." The verdict was received and recorded and the trial court withheld any written decree or judgment based on said verdict, "until findings and Decree of Court on equity issues is entered."

On various dates between April 1, and May 13, 1949, the trial court heard the evidence offered in connection with the second phase of the case, and on September 19, 1949, it entered its conclusions, findings and order, and each party was granted thirty days within which to file objections thereto. Each of the parties filed objections to said findings, and the court, after hearing said objections, entered its amended conclusions and findings on November 29, 1949, in which it found that one-third of the profit derived from the project was the sum of $61,902.79, and that $27,084.19 had been paid to Redak, leaving a balance of principal due and owing him, from defendant, of $34,818.60. We quote, inter alia, from the court's amended conclusions and findings:

"The evidence further shows from an audit on January 27, 1944, by one Edgar Dolberg, Registered Accountant,

and which audit was submitted to the defendant, that as of that date the following distribution of profits of the project had been made by the defendant to himself and others of the following amounts, to-wit:

|  | "Total Amount |
| --- | --- |
| "Date | Distributed |
| February 4, 1943 | $ 30,000.00 |
| May 3, 1943 | 45,000.00 |
| November 29, 1943 | 26,000.00 |

and plaintiff's share of these distributions should have been $10,000.00, $15,000.00 and $8,666.67 respectively. Through a mistake in book-keeping, which was discovered through the audit there was distributed to Morris and Jones $8,246.45 as of January 1, 1944 through payment of the funds of the project to one of the defendant's other operations, of which sum $2,748.81 was the property of plaintiff.

"On August 21, 1944, the balance in the Buckley Field checking account of $3,733.23 was distributed between defendant and Bob Morris and E. B. Jones, and the remaining equipment of a value of $2,576.31 was purchased by the said Jones; of these items, plaintiff was entitled to one-third of the checking account or $1,244.41, and to one-third of the amount paid for the equipment or $858.77.

"None of these withdrawals or distributions was ever disclosed to the plaintiff, and did not come to his knowledge until, after repeated demands and threat of legal action, the defendant surrendered the books of the project to the plaintiff, his attorney and accountant, on or about September, 1947.

"All during said time the defendant represented the profit to be $141,925.57, and endeavored to settle and terminate the partnership on that basis.

"Further, on June 15, 1945, all the remaining profits consisting of seven United States Treasury bonds in the sum of $10,000.00 each, were by written agreement dis-

tributed by the defendant, Earl C. Morris, to his brother, superintendent on the project, and E. B. Jones, principal contractor, and the project terminated.

"The Court finds that both in equity and in law the plaintiff should have received his share of the profits on the same date that the defendant received distributions from the project, and is entitled to interest on any share of the profit which the defendant withdrew to himself or brother and failed in like manner to distribute to the plaintiff his share, from the date of such withdrawal to date of judgment.

"The Court finds that the total amount of interest due plaintiff is $13,401.09 the details of which appear on the attached tabulation.

"Robert Morris, brother of the defendant, was by mutual agreement of the plaintiff and defendant, employed as superintendent of the project. He was paid $1,000 per month from the funds of the project, and plaintiff contends that it was agreed that he should receive only $500 per month. Defendant contends that it was agreed he was to receive $1,000 per month.

"The Court finds that $1,000 per month was a fair and reasonable salary and bonus, in view of the responsibility and accomplishments, and the plaintiff's claim for reimbursement and payment from the defendant of his share of the salary in excess of $500 per month is denied.

"It is undisputed that the plaintiff and defendant agreed between themselves that Robert Morris was to receive a bonus as an employee, namely, superintendent of the project, if the profit warranted the same. On or about January, 1943, the defendant represented that $29,184.71 was paid to Robert Morris as a bonus, and represented that it had been paid and charged as an expense of the project, leaving a profit of $140,984.79.

"These statements were false and were known by the defendant to be false at the time he made them.

"At that time there existed a contract between E. B. Jones and Robert Morris which was prepared and nego-

tiated by the defendant, Earl Morris, whereby E. B. Jones, contractor on the project, purported to give 'one-third of 50%' of the net profits of the project to Robert Morris as a bonus for services as superintendent in addition to $1000 per month salary. At no time did the plaintiff agree as to any amount to be paid as a bonus, nor did the defendant disclose to the plaintiff the bonus contract, nor was the bonus contract ratified by the plaintiff.

"The defendant contends that the plaintiff should contribute one-half of the bonus paid to his brother under the Jones-Morris contract, and that the same is a reasonable one.

"The Court finds that the plaintiff is not liable for any of the claimed bonus paid to Robert Morris, that the $1,000.00 a month paid to Robert Morris was a reasonable salary and bonus and the claim of the defendant for credit of any bonus on the amount due plaintiff is denied.

"The parties to this action, at the time the partnership was formed, mutually agreed that one Charles Atler, an accountant, should audit the books upon completion of the project to determine the profits thereof, and the Court finds the reasonable cost and value of the same to be $1,683.86, and that the plaintiff is entitled to recover one-half of said sum from the defendant, namely $841.93."

The judgment and decree entered by the court was in the following form:

"It is Ordered, Adjudged and Decreed, that plaintiff have judgment against the defendant on principal in the amount of $34,818.60, for one-third of the profits remaining unpaid under said partnership agreement; for interest at the rate of 6% per annum on each withdrawal of profit by the defendant which was not in like amount paid to the plaintiff, which is $13,401.09; for $841.93 due plaintiff for services of Charles Atler as Auditor; for $1,000 expert witness fees to be paid Charles Atler; for

costs in the following amounts: (a) depositions $374.70 (b) transcripts $271.80, (c) Court costs and witness fees $65.93. This is a total of $50,775.05.

"Motions for new trial are dispensed with.

"Done in open Court this 29th day of November, 1949, as of November 8, 1949."

To review this judgment, defendant brings the cause here by writ of error.

█ Attorneys for defendant, in their specification of points, set forth forty-six separate grounds for reversal. In their brief these specifications are argued under seventeen headings. Many of the specifications relate to the sufficiency of the evidence to sustain the findings of fact entered by the trial court, which we have hereinabove set forth in detail. It would unnecessarily lengthen this opinion to incorporate the numerous portions of the evidence tending to support the court's findings. The record in the cause is voluminous, consisting of four bound volumes, and the abstract of record consists of six hundred printed pages. Suffice it to say that we have carefully examined the whole record to determine whether there was competent evidence introduced on the trial to support the court's findings, and we conclude that each and all thereof are amply supported thereby. The findings of the trial court upon the controversial subject of the amount of salary and bonus payable to Robert Morris, will not be disturbed, since they are supported by competent evidence. We further determine that no reversible error was committed by the trial court in the admission or rejection of evidence.

In connection with the jury trial, which, by stipulation, was limited to the determination of one issue, we have given careful consideration to the contentions of counsel for defendant that the evidence is insufficient to support the verdict, and that, as a matter of law, defendant should not be permitted to assert a claim for one-third the net profits resulting from the construction

contract involved herein. With these contentions we do not agree.

The trial court committed no error in refusing to admit in evidence affidavits of two of the jurors relating to the manner in which they individually considered the effect of evidence concerning a bonus to Robert Morris. One juror stated in her affidavit, inter alia: "If I had supposed that Mr. Redak and Earl Morris would not take an equal deduction by reason of the bonus received by Robert Morris, I would not have agreed to the verdict which was rendered, and I believe this is true as to at least several of the jurors." Another juror supplied an affidavit of similar import although not altogether consistent with the one above mentioned. These affidavits were sworn to on the 8th day of April, 1949. The verdict to which they relate was entered February 26, 1949. On the trial, the sole question submitted to the jury for its determination was whether the interest of plaintiff in the net profits was one-third or one-fourth. They determined such interest to be one-third. Any legitimate charge allowable as an item of expense would necessarily be reflected in the amount of the net profit. Counsel for defendant rely on *Wharton v. People*, 104 Colo. 260, 90 P. (2d) 615, as authority for their contention that the court should have admitted and considered the affidavits of the jurors. The affidavits in question were not submitted in support of any motion for a new trial, but were merely offered in evidence during the trial of the issues which were submitted to the court for determination. The Wharton case, supra, is not comparable on the facts to the present action, and is no authority for the contention of defendant. It is the general rule, that a verdict cannot be impeached by the affidavit of a member of the jury. Although there are certain exceptions to this general rule, we are fully persuaded that there is nothing in the nature of the present case warranting a departure therefrom. *Boyles v. People*, 90 Colo. 32, 6 P. (2d) 7; *Knight v. Fisher*, 15 Colo. 176, 25 Pac. 78; *Mc-*

*Donald v. Pless*, 238 U. S. 264, 35 Sup. Ct. 783, 59 L. Ed. 1300; *United States v. Reid*, 53 U. S. 360, 13 L. Ed. 1023.

██ Much argument is advanced and many authorities are cited by counsel for defendant in support of those specifications of points relating to the action of the trial court in awarding $13,401.09 on account of interest as part of the judgment in favor of plaintiff. The award of this interest is assailed on several grounds. In their brief, counsel for defendant condense the argument on this phase of the controversy as follows: "Since the Colorado partnership statute allows interest only on capital, and the interest statute allows interest only to creditors, and since no capital is involved at bar, but only profits, and since Redak is not a creditor but a partner, and there has been no settlement or account stated, it is evident that the judgment for interest was erroneous." It further is contended that since the complaint is not for an accounting and dissolution of the partnership between plaintiff and defendant, the action is not maintainable, and no interest could be awarded until a liquidated sum had been found to be due by an action for accounting and dissolution of partnership. Since the agreement of the parties did not include a provision relating to the payment of interest, it can be authorized only under the terms of the interest statute, section 2, chapter 88, '35 C.S.A.

Plaintiff successfully contended before the trial court that interest was authorized in the instant case under the latter portions of the statute, providing for 6% interest, " * * * on money due on account from the date when the same became due, and on money received to the use of another and retained without the owner's consent, expressed or implied, from the receipt thereof; and on money taken or retained and fraudulently converted to the taker's use from the time of taking."

Defendant's counsel cite 40 American Jurisprudence, section 470, page 456, and section 472, page 457, as follows:

"§470. * * * Generally, a partner cannot maintain an action at law against another partner to recover a share of partnership profits until after a full accounting of the partnership affairs. The remedy in such cases is ordinarily to be sought in a court of equity by a bill for an accounting in the settlement of the partnership affairs."

"§472. * * * Money received by one partner during the partnership relation is received for the use of both partners; all that either is entitled to is a moiety of what remains after all partnership debts are paid, and it is settled beyond question that one partner cannot maintain an action at law against another partner for partnership money had and received by the latter for the use of the firm, unless the partners have settled their accounts and struck a balance."

Numerous authorities are cited in support of these general principles. It is claimed that *Heiselt v. Brown*, 108 Colo. 562, 120 P. (2d) 644, is authority for the proposition that, subject to certain exceptions, an action at law by one partner against his copartner will not lie on a claim connected with, or growing out of, the partnership relation, until the partnership is wound up in equity and the accounts finally settled.

If the facts had been found to be those for which counsel for defendant contend, this argument might have some substantial support; however those found by the court to exist bring the case well within recognized exceptions to the general rules above quoted from American Jurisprudence. Some of these exceptions are mentioned in *Heiselt v. Brown, supra,* in which our court recognized that, where a partnership has been dissolved, or where its business has been concluded, or where a partnership exists for a single venture or special purpose, or where a balance has been struck, liabilities have been discharged and affairs have been settled between partners, the rule does not apply. *Frith v. Thomson*, 103 Kans. 395, 173 Pac. 915.

In *Mason v. Sieglitz*, 22 Colo. 320, 44 Pac. 588, the

claim of plaintiff was for one-third of a commission alleged to have been earned by himself, defendant, and one Moorman, in carrying out their agreement in effecting the sale of certain mining property in New Mexico. One of the defenses is set forth in the opinion as follows: "It is said that this action cannot be maintained for the reason that the complaint shows that there was a partnership between the parties to this agreement, and that one partner cannot sue another for a debt growing out of a partnership transaction, but that the proper action is one for a dissolution of the partnership, and for an accounting."

After considering whether the relation established by the agreement was a true partnership, we said: "But if there was a partnership, there being but one item unadjusted, the kind of action brought by the plaintiff would lie at common law; and under the code, there being but one form of civil action, if the facts set up in the complaint entitle the plaintiff to any kind of relief, if the evidence warrants it, such relief will be awarded."

In the case at bar, plaintiff and defendant contracted with reference to a single transaction, namely, the Buckley Field construction project. The jury by its verdict fixed plaintiff's interest at one-third of the net profit. Jones, partner of defendant under written agreements to which plaintiff was not a party, was entitled to one-third of said profits. The project was completed about March 1, 1943, and the final payment was made by the government about April 20, 1943. On May 18, 1944, Jones and defendant were parties to a dissolution agreement in which the relationship of partners as between themselves was fully terminated upon said building contract, and on the 14th day of June, 1945, a supplemental agreement finally concluded any partnership relation between them. Prior thereto, Jones had been paid his full one-third share of the profits, defendant had received his share, and the balance of the profits remained in the possession of defendant, except for the sum of

$27,084.19 which had been distributed to plaintiff. The total amount of profit resulting from the job was fully determined in the Dolberg audit of January 27, 1944, except for a very minor computation concerning the value of some equipment remaining on hand at the time of the completion of the work. Under these circumstances, the rule for which defendant contends is not applicable. An extended annotation of cases dealing with the rule, and the exceptions thereto, will be found in 21 A.L.R., pages 21 to 134. The trial court did not err in awarding interest to the plaintiff.

██ Defendant specifies error upon the action of the trial court in awarding, as part of costs, $374.70 for depositions taken by plaintiff in advance of the trial, and the further sum of $271.80 for transcripts of testimony taken upon the first trial of the action, which was to a jury and which resulted in a disagreement. It is admitted that all witnesses whose depositions were taken, made personal appearances at the trial, and that the depositions were used solely for the purpose of discrediting some of the testimony given in open court.

Concerning the cost of transcripts of evidence taken in the first jury trial, $61.20 thereof was expended by plaintiff in connection with the testimony of Bessie S. Degen. A copy of this transcript was furnished defendant and it was stipulated that the same should become a part of the record in this cause in so far as the court trial was concerned, without repetition thereof, and for this purpose the Degen transcript is a part of the record now under consideration. $210.60 additional was expended by plaintiff in securing other transcripts of testimony which were used for the purpose of testing the credibility of witnesses who appeared and testified at the trial.

It is argued by attorneys for plaintiff that the allowance of costs is a matter within the discretion of the trial court, and that in the absence of a showing of an abuse of this discretion an award for costs will not be

disturbed on review. It further is contended by plaintiff's counsel that Rule 16 of the rules of the district court of the Second Judicial District, adopted February 7, 1942, provides that, "Whether depositions, or any parts thereof, shall be taxed as costs shall be in the discretion of the trial Court." There is no provision in our Rules of Civil Procedure authorizing the assessment, as costs, of stenographic expense incurred in the taking of a deposition for purposes of discovery. We consider that taking depositions of witnesses in preparation for trial is something in the nature of a luxury, and that one who avails himself of this procedure does so at his own expense. This applies with equal force to expenditures made in procuring transcripts of testimony given at a previous trial. If the testimony of the person whose deposition is taken is not available at the trial, and the deposition is offered in lieu thereof, then the court would have discretion in determining whether the expense of procuring the deposition should be assessed as costs against the losing party. Under the circumstances of this case, however, we disapprove the allowance by the court of $374.70 for the taking of depositions, and also we disapprove the award of $210.60 for the preparation of transcripts of testimony. These two items should be deducted from the judgment entered against defendant.

Other specifications of points not specifically discussed in this opinion have been carefully considered and are found to be without merit. The judgment is modified as hereinabove indicated, and, as modified, affirmed.