David NEIL, Petitioner,

v.

Andrew ESPINOZA, Jeannie Espinoza, Judith Espinoza, Arthur Espinoza, Jr., Barry Espinoza, and Beverly Espinoza, Respondents.

No. 85SC425.

Supreme Court of Colorado,
En Banc.

Dec. 14, 1987.

Rehearing Denied Jan. 11, 1988.

---

Halaby & McCrea, Theodore S. Halaby, Robert M. Liechty, Denver, Bruno, Bruno & Colin, P.C., Lakewood, for petitioner.

1. Also named as defendants were the City and County of Denver and two other police officers. The case against the two police officers was dismissed during trial, and a mistrial was declared as to the City and County of Denver after the jury was unable to reach a verdict. This appeal involves only Officer Neil.

2. 42 U.S.C. § 1983 (1982):
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the dep-

Gerash, Robinson, Miller & Miranda, P.C., Scott H. Robinson, Denver, for respondents.

ROVIRA, Justice.

Defendant David Neil, a Denver police officer, shot and killed Arthur Espinoza on July 31, 1977. Espinoza's six children filed suit against defendant[1] in 1977 under 42 U.S.C. § 1983 (1982),[2] alleging that defendant's killing of their father deprived them of their fourteenth amendment liberty interests in familial association without due process of law.[3]

Trial to a jury was held in March of 1985. The trial court entered judgment on the jury verdict in the amount of $150,000 compensatory and $5,000 punitive damages for each plaintiff and against defendant. Defendant appealed to the court of appeals, and we granted his petition for a writ of certiorari before judgment pursuant to C.A.R. 50.

Defendant cites three errors in the court below as requiring reversal. First, the plaintiffs should have been required to prove not only that defendant killed Arthur Espinoza knowingly, but also that he did so with the intent to deprive the plaintiffs of their familial association rights. Second, the trial court should not have entered judgment on a non-unanimous jury verdict and should not have considered an affidavit of one of the jurors in entering judgment. Third, the trial court should have declared a mistrial on the grounds that one of the jurors failed to disclose relevant information on *voir dire*.

rivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. The trial court originally dismissed the action on the basis that plaintiffs had failed to exhaust their remedies under the Colorado Wrongful Death statute, but we reversed the order of dismissal and reinstated the complaint. *Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981), *dismissed*, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982).

Because we agree with defendant's second contention, we vacate the judgment and remand for a new trial.[4]

## I.

The jury originally returned a verdict in favor of plaintiffs and awarded $5,000 to each plaintiff as punitive damages. The jury placed a question mark, however, in the space provided on the verdict form for compensatory damages. After the members of the jury were told by the judge that they had to specify a sum to award compensatory damages, and that they could not award punitive damages without compensatory damages, they were sent back to the jury room to clarify their verdict. Upon further deliberation, they returned a verdict form with the amount of $150,000 entered as compensatory damages and $5,000 as punitive damages for each plaintiff.

Counsel for defendant requested that the jury be polled, and the first five jurors responded affirmatively to the court's query, "Was this and is this your verdict?" When Raymond Rector, the sixth juror, was questioned, the following colloquy took place:

The Clerk: Mr. Rector, was this and is this your verdict?

Mr. Rector: May I ask a question, your Honor?

The Court: You may.

Mr. Rector: Can this be decided, the actual damages, by majority vote?

The Court: No, it has to be unanimous.

Mr. Rector: It was by majority.

The Court: In that event, you haven't reached unanimity as to the actual damages in this case.... [A]m I correct there is no unanimity as to the actual damages in this case? You were asked by the poll whether it was and is it your verdict. Are one or more of you saying this is—

Mr. Rector: I'm prepared to say that it was not unanimous.

The Court: Under those circumstances, I have no alternatives but to declare that the jury has not reached a verdict as to either claim for relief in this case and I'm going to discharge the jury. You don't feel [there] would be any point in continuing any more? Very well.

The jury was thereupon discharged and left the courtroom. The court then stated:

In view of the polling of the jury and the statement by one of the jurors that the actual damages that were added to the verdict form was done by majority rather than unanimous vote, the Court is going to entertain a Motion for New Trial and ask this be reset on all issues.

The court set a briefing schedule for post-trial motions, but before briefs were submitted the court entered judgment against defendant and in favor of each plaintiff in the amount of $150,000 compensatory and $5,000 punitive damages.

Plaintiffs thereafter filed a brief in support of the entry of judgment and append-

4. Because the second issue is dispositive, we decline to address the first and third questions.

With respect to the first question, defendant urges us to overrule *Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981), *cert. dismissed*, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982), in part and to adopt the Tenth Circuit's holding in *Trujillo v. Board of County Commissioners*, 768 F.2d 1186 (10th Cir.1985). *Trujillo* held that in a section 1983 action by relatives of a deceased, the relatives must prove not only that the defendant killed the deceased, but further that the defendant did so with the intent to deprive the relatives of their constitutional rights to familial association.

Defendant did not object to the jury instructions at trial, and even the instructions he ten-

dered (but which were rejected) did not include the principle of law he now asks us to adopt. This issue was not raised until defendant submitted a supplement to his post-trial briefs, and plaintiffs did not respond. The trial court ruled that it was required to follow our decision in *Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981), *cert. dismissed*, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982), notwithstanding the Tenth Circuit's decision. Because the defendant did not properly preserve any objection to the jury instructions, our opinion with respect to *Trujillo* would be merely advisory, and we therefore decline to address defendant's first argument.

ed to their brief an affidavit of Rector that included the following statement:

> [I]n stating that the verdict was a majority decision, I was feeling uncomfortable because I felt that the compensatory damages award should be much greater for each child. That is the reason that I stated that the verdict was not my verdict.

Defendant timely objected to the entry of judgment and moved that the affidavit of Rector be stricken. At oral argument on the post-trial motions, the court denied relief to defendant and explained:

> The Court ... felt that inasmuch as it had a verdict signed by all six jurors that the Court had no alternative but to enter judgment on the verdict, if nothing more than a springboard for the motions of counsel as it related to the declaration of a mistrial.
>
> Having reviewed [Rector's] affidavit, the Court feels that the defendants were not prejudiced inasmuch as the juror Rector would have given a larger sum of money, obviously the fact that he must have inherently agreed with the lesser sum of money.

The court shortly thereafter issued a minute order holding, in part,

> Defendants' Motion to Strike the Affidavit of Juror Raymond Rector is denied. The court is well aware of authorities prohibiting the use of a juror Affidavit from probing the mental processes of the jury. However, the Affidavit of Juror Rector is an explanation of what he said in the jury box at the time the jury was polled, and does not impermissibly reveal the juror's mental processes.

## II.

The trial court's entry of judgment after the jury was discharged was improper under the controlling rules of procedure:

> (o) **New Trial if No Verdict.** When a jury is discharged or prevented from giving a verdict for any reason, the action shall be tried anew.

> ....

> (s) **Verdict Recorded, Disagreement.** The verdict, if agreed upon by all jurors, shall be received and recorded and the jury discharged. If all the jurors do not concur in the verdict, the jury may be sent out, or may be discharged.

C.R.C.P. 47.

Once the trial court learned that the verdict was not unanimous, it could either have sent the jury out for further deliberation or else discharged the jury. C.R.C.P. 47(s). The court determined that further deliberations would be futile, and thus chose to discharge the jury. Having done so, it had no choice but to order a new trial. C.R.C.P. 47(o).

As we have explained in analogous circumstances, "once a jury has been discharged, and the members of the jury dispersed, the court cannot reconstitute the jury and poll the individual members to determine their intent in rendering a verdict...." *Kreiser v. People,* 199 Colo. 20, 22, 604 P.2d 27, 28 (1979). Here, the court discharged the jury after polling. Although the court did not formally reconstitute the jury, its action in entering judgment and later in receiving the affidavit of Rector presented precisely the problem we faced in *Kreiser:* The court attempted to give force to a defective verdict after the jury was discharged.

By entering judgment on the jury verdict as signed by the jurors, the court disregarded Rector's declaration during polling that the verdict was not, in fact, unanimous. We cannot approve the court's action. To permit a court to ignore the results of polling would be to render polling a wholly unnecessary procedure and deprive litigants of the opportunity to ensure that verdicts are, as required by law, unanimous.

Moreover, the trial court erred by failing to strike the affidavit of Rector. CRE 606(b) prohibits the use of any testimony by jurors for the purpose of resurrecting or impeaching a verdict except in limited circumstances:

**Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jurors' attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

CRE 606(b).

Our previous decisions, decided both under the Colorado Rules of Evidence and under common law, have given substantial weight to the interests protected by shielding verdicts from impeachment by the testimony of jurors: "[t]o allow such inquiry could subject jurors to harassment and coercion after the verdict and create uncertainty on the finality of verdicts." *Santilli v. Pueblo*, 184 Colo. 432, 433–34, 521 P.2d 170, 171 (1974) (cannot impeach verdict by testimony showing jury misunderstood instructions). *See also Pletchas v. Von Poppenheim*, 148 Colo. 127, 132, 365 P.2d 261, 264 (1961) (cannot admit testimony that jurors doubled damage award because they believed attorney received 50% fee); *Morris v. Redak*, 124 Colo. 27, 36–37, 234 P.2d 908, 912–13 (1951) (trial court properly excluded affidavits explaining jurors' interpretation and use of certain facts). *Cf. People v. Collins*, 730 P.2d 293, 302 (Colo. 1986) (trial court may consider testimony that juror was coerced into agreeing to verdict); *Alvarez v. People*, 653 P.2d 1127, 1131 n. 9 (Colo.1982) ("affidavits may be

considered when misconduct and external influences are involved," but not "to reveal the mental processes of the jurors in reaching their verdict").

As two leading commentators explained about the nearly identical federal rule:[5]

A point of central importance in [the Rule's] descriptive phrases is this: It would have been hard to paint with a broader brush, and in terms of subject, Rule 606(b)'s exclusionary principle reaches everything which relates to the jury's deliberations unless one of the exceptions applies.

D. Louisell & C. Mueller, 3 *Federal Evidence* § 287 at 121 (1979).

Rector's affidavit stated, in essence, that he dissented from the jury's award of compensatory damages because he thought the award inadequate. That feeling on his part is, contrary to the trial court's finding, very much the sort of "mental process" into which the litigants and the court may not inquire. Because Rector could not have been called upon to explain why he dissented from the jury's verdict, his affidavit should not have been received for that purpose.

In addition, the court found that the defendant suffered no prejudice from the irregular verdict since Rector would merely have awarded more damages than the other members of the jury. *See Alvarez*, 653 P.2d at 1131–32 (discussing—but not deciding—necessity of showing prejudice from juror misconduct). It was inappropriate for the court to have required defendant to show prejudice since the court's action in rejecting the jury's verdict after polling the jurors and then discharging the jury was tantamount to declaring a mistrial. Thus, there was no longer any verdict to resurrect or impeach. Moreover, even if there had been, Rector's affidavit was the sole evidence upon which the court relied as establishing a lack of prejudice; because

**5.** The federal rule is different only in that it uses "jury's" in place of "jurors'" in the first sentence.

the affidavit was inadmissible, it cannot support the court's finding.

■ Finally, plaintiffs argue that the verdict was at least sufficient to establish defendant's liability even if the amount of damages was not decided unanimously. Because we cannot consider Rector's affidavit as establishing unanimity with respect to liability, we must rely on the verdict and subsequent polling to determine whether the jury was unanimous with respect to defendant's liability. Although Rector's responses to the court's questions may be read as indicating only his disagreement with the amount of damages, they may also be read as suggesting his dissent from the jury's awarding any actual damages. Without more definitive evidence of the jury's agreement as to defendant's liability, we cannot state with confidence that defendant's liability was established to the satisfaction of all the jurors.

Accordingly, the judgment is vacated and the case remanded for a new trial on all issues.

MULLARKEY, J., concurs in part and dissents in part.

KIRSHBAUM, J., joins in the concurrence and dissent.

MULLARKEY, Justice, concurring in part and dissenting in part:

Although I concur in the portion of the majority opinion ordering a new trial on the issue of damages, I do not agree that a new trial is required on the issue of liability. The record makes clear that the jurors agreed that the defendant, David Neil, was liable to the plaintiffs for damages under 42 U.S.C. section 1983 and that the disagreement among the jurors was only as to the amount of actual damages. Accordingly, I would affirm the trial court's judgment as to liability and remand for a new trial only as to damages.

## I.

The verdict form was divided into three parts: first, Neil's liability to the plaintiffs; second, the City and County of Denver's liability to the plaintiffs; and third, the amount of damages to be awarded to the plaintiffs. Each part was divided into six subparts, one for each plaintiff. The first part, as filled in by the jury, read as follows:

We, the jury, unanimously find as follows:

I. Claim for intentionally depriving Plaintiffs of their constitutional rights, asserted against Defendant David Neil:

CHECK ONE BOX ONLY AFTER EACH LETTER.

| | | |
|---|---|---|
| a) For Andrew Espinoza | ☒ | For David Neil ☐ |
| b) For Jeannie Espinoza | ☒ | For David Neil ☐ |
| c) For Judith Espinoza | ☒ | For David Neil ☐ |
| d) For Arthur Espinoza, Jr. | ☒ | For David Neil ☐ |
| e) For Barry Espinoza | ☒ | For David Neil ☐ |
| f) For Beverly Espinoza | ☒ | For David Neil ☐ |

The second part was left blank, because the jurors could not agree on the City and County of Denver's liability. The third part, on which the majority focuses, read as follows:

ONLY in the event you find *for* a particular Plaintiff on one or both of his/her claims, complete the following as to such Plaintiff: (Punitive Damages may be assessed only against defendant, David Neil)

Upon our unanimous verdict for Plaintiff

a) Andrew Espinoza, we award him $_____ actual damages; we award him $_____ in punitive (exemplary) damages against David Neil.

b) Jeannie Espinoza, we award her $_____ actual damages; we award her $_____ in punitive (exemplary) damages against David Neil.

c) Judith Espinoza, we award her $_____ actual damages; we award her $_____ in punitive (exemplary) damages against David Neil.

d) Arthur Espinoza, we award him $_____ actual damages; we award him $_____ in punitive (exemplary) damages against David Neil.

e) Barry Espinoza, we award him $_____ actual damages; we award him $_____ in punitive (exemplary) damages against David Neil.

f) Beverly Espinoza, we award her $\_\_\_\_\_ actual damages; we award her $\_\_\_\_\_ in punitive (exemplary) damages against David Neil.

The jury initially placed a question mark in the space for actual damages to be awarded each plaintiff and $5000 in the blank for punitive damages to be awarded each plaintiff. Upon receiving the verdict, the trial judge properly instructed the jury that it had to award a specific amount of compensatory damages. The jury resumed its deliberations and all six jurors signed a verdict form striking the question marks and awarding $150,000 in actual damages to each plaintiff. The jury left in place the $5,000 in punitive damages to each plaintiff.

At defendant's request, the trial judge then polled the jurors, asking each "was this and is this your verdict?" Five jurors answered in the affirmative. The sixth juror, Raymond Rector, asked, "Can this be decided, *the actual damages*, by majority vote?" (Emphasis added.) The judge replied that "it has to be unanimous." Rector informed him that "[i]t was by majority." The judge then stated, "In that event, you haven't reached unanimity *as to the actual damages in this case.* ... [A]m I correct there is no unanimity *as to the actual damages in this case?*" (Emphasis added.)

After the jury had been discharged, the trial judge stated that because of "the statement by one of the jurors that the actual damages that were added to the verdict form" had not been decided by a unanimous vote, the court would entertain a motion for a mistrial or a new trial. Four days later, prior to receiving Rector's affidavit or any relevant motions or briefs, the court entered an order of judgment *nunc pro tunc* to the day the jury had been dismissed. That order stated that the initial verdict against the defendant, David Neil, had been "unanimous," but that one juror had indicated that the sum of $150,-000 for compensatory damages "was not arrived at by unanimous vote but only by majority vote." In its order of judgment, the trial court entered judgment for the plaintiffs and against Neil, awarding $150,-000 in compensatory damages and $5,000 in punitive damages to each plaintiff. After reviewing the post-trial briefs, the judge orally confirmed the entry of judgment.

## II.

Colorado Rule of Civil Procedure 59 provides that a new trial may be granted on "all or part of the issues." When the issue of liability is entirely separate and distinct from the issue of damages and the jury verdict is improper only as to the amount of damages, in general the jury's verdict as to liability is determinative and the court should grant a new trial only as to damages. *See, e.g., Kistler v. Halsey,* 173 Colo. 540, 481 P.2d 722 (1971); *Denton v. Navratil,* 170 Colo. 158, 459 P.2d 761 (1969); *Whiteside v. Harvey,* 124 Colo. 561, 239 P.2d 989 (1951); *Brncic v. Metz,* 28 Colo.App. 204, 471 P.2d 618 (1970); *cf.* 6A J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice* ¶ 59.06 (2d ed. 1987) (discussing partial new trials under Fed.R.Civ. P. 59(a)). However, if the trial court finds that an excessive jury verdict was the result of bias, prejudice, or passion, then it must grant a new trial on all issues, since it is not possible to determine whether and how much the jury's verdict as to liability was also improperly influenced. *See Marks v. District Court,* 643 P.2d 741 (Colo.), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982); *see also Higgs v. District Court,* 713 P.2d 840, 861 (Colo.1985). In deciding whether a new trial on all issues is warranted, "the determinative considerations are those factors relating to fairness." *Marks,* 643 P.2d at 744 (quoting *Kitto v. Gilbert,* 39 Colo.App. 374, 570 P.2d 544 (1977)).

Here, the issues are clearly separate and distinct, as shown by the three parts of the verdict form. No one questioned the unanimity of the jury's verdict as to liability. There is no suggestion that the jury was motivated by bias, prejudice, or passion.

The majority opinion remands for a new trial on all issues based solely on one juror's unexplained statement that the jury was not unanimous as to the amount of actual damages which the plaintiffs should be awarded. Because it is clear that the jurors all agreed that Neil was li..le to the plaintiffs, basic fairness requires that the trial court's judgment as to liability be affirmed. On the same basis, I agree that because the jury's intent as to the amount of damages cannot be discerned from the record, we must remand this matter on the question of damages.

The majority opinion relies on the fact that the trial judge did not technically comply with the requirements of C.R.C.P. 47(*o*) and (s), because he did not receive and record the jury's verdict as to liability before discharging the jury. However, the record[1] on its face shows that the jury unanimously returned a verdict on liability in favor of the plaintiffs and against the defendant Neil. When the jury's intent is clear from the face of the record, it must be given effect. *Tyler v. District Court*, 200 Colo. 254, 256, 613 P.2d 899, 901 (1980); *Rome v. Gaffrey*, 654 P.2d 333, 334 (Colo. Ct.App.1982). Accordingly, I would conclude that the trial court's failure to formally record the jury's verdict prior to discharging the jury was harmless error. *See* C.R.C.P. 61.

### III.

Because I conclude that Rector's statement during the polling is not a sufficient basis for vacating the trial court's judgment on the question of liability, I must address the other issues on which we granted certiorari.

First, the defendant argues that we should modify our decision in the first appeal of this case, *Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981), *dismissed*, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982).[2] The defendant relies solely on a recent Tenth Circuit decision holding that "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under [42 U.S.C.] section 1983." *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir.1985). He suggests that *Espinoza* did not decide what type of conduct would amount to a deprivation of the constitutional liberty interest in a continuing family relationship, so that we are free to follow *Trujillo*. In *Espinoza* we stated that the plaintiffs had "allege[d] the deprivation of a constitutional liberty interest in a continuing family relationship" and that they had stated a claim upon which relief could be granted. 633 P.2d at 465. Therefore, defendant's suggestion that we did not decide what type of conduct amounts to a deprivation is without merit.

In addition, *Trujillo* has been criticized by several other jurisdictions. *See, e.g., Smith v. City of Fontana*, 818 F.2d 1411, 1420 n. 12 (9th Cir.) (declining to follow *Trujillo* because *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662

---

1. I agree with the majority opinion that Rector's post-trial affidavit cannot properly be considered in determining whether the trial court's error was harmless. *See* CRE 606(b). Accordingly, I base my analysis only on the statements that the trial judge and the jurors made at the time of the trial and on the form of the verdict itself.

2. The majority declines to address this argument because the defendant did not properly preserve the issue for appellate review. The issue was raised, although briefly, during the March 12, 1985, hearing on the defendant's motion for directed verdict. The defendant argued that the plaintiffs had failed to prove their case because the evidence showed only that the defendant's conduct was directed toward the deceased father of the plaintiffs and that no evidence showed "that any of the actions here were [sic] intended and directed toward the claimants who are the heirs." (*Trujillo* was not discussed; it had not been decided at that time.) The trial court rejected the defendant's argument based on its interpretation of *Espinoza*. The issue also was raised by the defendant in a post-trial supplemental brief citing *Trujillo* and was rejected by the trial court in its order denying the defendant's motion for new trial. The issue has been fully briefed and argued before us and the plaintiffs have not asserted that the issue was not properly preserved. Accordingly, I believe the issue is before us and should be decided.

(1986), solved the "floodgate" problem with which the *Trujillo* court was concerned), *cert. denied,* — U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *de la Cruz LaChapel v. Chevere Ortiz,* 637 F.Supp. 43, 46 (D.P.R.1986) (finding the *Trujillo* intent requirement "idealistic and unworkable"). *But cf. Stengel v. City of Hartford,* 652 F.Supp. 572, 575 (D.Conn.1987) (citing *Trujillo* in support of imposing an intent requirement in first amendment context). At least one district court in the Tenth Circuit has concluded that an allegation of recklessness or deliberate indifference satisfies the *Trujillo* intent requirement. *White v. Talboys,* 635 F.Supp. 505, 507 (D.Colo. 1986). In *Trejo v. Wattles,* 636 F.Supp. 992, 997 (D.Colo.1985), plaintiff alleged that defendants had fatally shot his son. The *Trejo* court held that allegations almost identical to those in the case before us satisfied the *Trujillo* intent requirement. *Compare Trejo,* 636 F.Supp. at 997 *with Espinoza,* 633 P.2d at 459.

The defendant contends that 42 U.S.C. section 1988 requires this court to follow federal law and specifically to follow *Trujillo.* The United States Supreme Court has explained that section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). The Supreme Court has not addressed the question of what conduct and what type of intent must be alleged to state a claim for the deprivation of the constitutional liberty interest in a continuing family relationship. The *Trujillo* intent requirement is the minority view. *See, e.g., Kelson v. City of Springfield,* 767 F.2d 651, 654–55 (9th Cir.1985); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1242–45 (7th Cir.1984); *Mattis v. Schnarr,* 502 F.2d 588, 593–95 (8th Cir.1974); *Jones v. McElroy,* 429 F.Supp. 848, 852–53 (E.D. Pa.1977). Our decision in *Espinoza,* 633 P.2d 455, is consistent with the majority federal rule. Accordingly, we need not decide whether, if the *Trujillo* intent requirement were clearly the federal rule on this issue, section 1988 would require us to adopt that requirement.

In summary, our prior decision in *Espinoza,* 633 P.2d 455, is the law of the case and one of the purposes of the law of the case doctrine is to protect against the reargument of settled issues in the same action. *People v. Roybal,* 672 P.2d 1003, 1005 (Colo.1983). Although we have the power to reconsider our prior decision, there is no compelling reason to do so and I would decline to modify our decision in *Espinoza v. O'Dell,* 633 P.2d 455.

IV.

Finally, defendant argues that one juror's lack of candor during voir dire requires that the jury's verdict be vacated. A new trial is required under this theory only if a juror deliberately misrepresented or concealed relevant facts. *See People v. Dunoyair,* 660 P.2d 890, 895–96 (Colo.1983) (inadvertent nondisclosure is not sufficient to require a new trial absent a showing of actual bias); *People v. Borrelli,* 624 P.2d 900, 903 (Colo.Ct.App.1980) (juror's deliberate lack of candor requires a new trial). Here, defendant contended that Rector failed to disclose certain aspects of his background, including that he once had been detained overnight in jail and that he had been investigated by the FBI after subscribing to a communist newspaper.

The trial court held an evidentiary hearing on the question of Rector's alleged lack of candor. The judge found that "the questions propounded on voir dire were truthfully answered and there was no nondisclosure of any material or relevant fact inquired into by counsel or the Court." Although the jurors had been asked if they had had any unusual experiences with police officers or had ever been arrested, none of the questions was explicitly addressed to the type of incidents which defendant contended Rector had concealed. The trial court's findings of fact are supported by competent evidence and the correct standard of law was applied. Accordingly, I would conclude that the trial court

was correct to hold that this allegation did not require a new trial.

## V.

For the reasons given above, I would hold that the trial court properly rejected the defendant's arguments about the effect of *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, and the alleged lack of candor of one juror. Like the majority, I would remand for a new trial on the question of damages. However, requiring a new trial on liability would be nothing but a windfall for the defendant, needlessly prolonging litigation which already has taken almost ten years. The defendant has had a full and fair trial on liability in which a unanimous jury found against him. I do not believe he is entitled to relitigate liability based solely on a technical error by the trial judge which the judge tried to correct within a few days of trial. Accordingly, I would affirm the entry of judgment in favor of the plaintiffs and against defendant Neil on the question of Neil's liability under 42 U.S.C. section 1983 (1982).

I am authorized to state that KIRSH-BAUM, J., joins in this concurrence and dissent.