No. 21981.

Department of Highways, State of Colorado *v.* Carl
V. Schulhoff, Edna M. Schulhoff, and Frank Stanbro
as Treasurer of Jefferson County.

(445 P.2d 402)

Decided September 30, 1968.

74

DUKE W. DUNBAR, Attorney General, THOMAS W. SULLIVAN, Special Assistant, JOHN P. HOLLOWAY, Chief Highway Counsel and Assistant Attorney General, GEORGE L. ZOELLNER, Chief Highway Counsel and Assistant Attorney General, JOSEPH M. MONTANO, Chief Highway Counsel and Assistant Attorney General, for plaintiff in error.

HOLLEY, BOATRIGHT & VILLANO, for defendants in error Carl W. Schulhoff and Edna M. Schulhoff.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS is an eminent domain case involving the taking of a strip of land by the Colorado Department of Highways, hereinafter referred to as the State. The strip of land taken, designated as Parcel No. 320, contained 33,000 square feet or slightly more than three-fourths of an acre and was the front portion of an unimproved five-acre tract of land which was zoned Agricultural I at the date of valuation. The landowners, hereinafter referred to as the Schulhoffs, stipulated to a waiver of damages to the residue. The verdict of the jury awarded

to the Schulhoffs the sum of $5,610, upon which judgment was entered.

Points of error urged by the State are:

(1) That the trial court erred in permitting the Schulhoffs' appraisers to use improper and speculative methods of valuation in giving their opinion as to the value of the property taken;

(2) The trial court erred in refusing to give one of the State's tendered instructions.

As cross error, the Schulhoffs contend that the trial court erred:

(1) In refusing to permit their appraisers to use the sales of lots in a platted area in the immediate vicinity as comparable to the subject property; and

(2) That the State's appraiser, over objection, was permitted to use improper and unacceptable methods in expressing an opinion on the market value of the land taken.

We will discuss each point asserted as error in the order presented.

### I.

Each of the appraisers agreed in the trial court that the highest and best use of Parcel No. 320 was for subdivision into residential building sites. The Schulhoffs' appraisers, however, were permitted to arrive at their opinions of the fair market value of Parcel No. 320 by hypothetically carving it up into residential building sites, estimating the value of each site, and then adding the estimated values of all the sites together. The State contends that this method of evaluation was improper and highly speculative. We agree and hold that the error in admitting such evidence was prejudicial.

It is axiomatic that in eminent domain proceedings speculative or prospective values are not admissible in arriving at the fair market value of the property. In *Wassenich v. City of Denver*, 67 Colo. 456, 465-466, 186 P. 533, 537, this court stated that:

"* * * The jury are to determine and allow the present

fair, cash market value at the time of the trial, and are not to allow for any speculative or prospective values. In determining the present cash value the most advantageous use to which the property may reasonably be applied may be considered. Any reasonable future use to which the land may be adapted or applied by men of ordinary prudence and judgment may be considered in so far only as it may assist the jury in arriving at the present market value. The owner is entitled to have considered the most advantageous use in the future to which the land may be reasonably applied, not with the view of allowing him for speculative or prospective damages or values, but only as such evidence may bear upon or affect or assist in arriving at the present market value. It is the duty of the jury to find and allow no more than the present market value, no matter what the future prospects may be, and this character of evidence may be considered only for the purpose of ascertaining the market value at the time of the trial. After considering any and all reasonable uses to which the property may be put in the future, the question is, taking all things into consideration, what is the present market value, not what will or may be its value later on account of some use to which it may be put in the future. Market value ordinarily means what price property would bring if sold in the open market under ordinary and usual circumstances, for cash, assuming that the owner is willing to sell and the purchaser willing to buy, but neither under any obligation to do so. So the question for the jury to answer [is], considering its reasonable availability for all valuable uses, or the most advantageous use, how much would the property bring in cash if offered now for sale by one who desired but was not obliged to sell, and was bought by one who was willing but not obliged to buy. * * *"

See *Ruth v. Department of Highways,* 145 Colo. 546, 359 P.2d 1033; *Union Exploration Co. v. Moffat Tunnel Improvement District,* 104 Colo. 109, 89 P.2d 257.

The application of the general rule set forth in *Wassenich* to testimony of the fair market value of undeveloped property with subdivision potential is one of first impression in Colorado. However, this has been the subject of extensive litigation in other jurisdictions and discussion by treatise writers. Our research of numerous authorities dealing with testimony of the nature permitted by the trial court in the case at bar indicates that such testimony has been almost universally condemned as improper.

■ The applicable rule is ably stated in 4 Nichols, The Law of Eminent Domain § 12.3142[1] (3d ed. rev. 1962):

"* * * It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed. * * * The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use."

■■ It is proper to show that a particular tract of land is suitable and available for subdivision into lots and is valuable for that purpose. It is not proper, however, to show the number and value of lots as separated parcels in an imaginary subdivision thereof. Stated differently, it is improper for the jury to consider an undeveloped tract of land as though a subdivision thereon is an accomplished fact. Such undeveloped property may not be valued on a per lot basis, the cost factor clearly being too speculative.

Such rule is also stated in *Pennsylvania S.V.R. Co. v. Cleary*, 125 Pa. 442, 17 A. 468, which was cited and quoted with approval in *Monongahela West Penn Public Service Co. v. Monongahela Development Co.*, 132 S.E. 380, 385 (W. Va.), as follows:

" 'It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted, but it is the tract, and not the lots into which it might be divided, that is to be valued. * * * The jury are to value the tract of land, and that only. They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. A speculator or investor in deciding what price he could afford to pay would consider the chances and probabilities of the situation as then actually existing. A jury should do the same thing. They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in. This is a rule that is well settled * * *.' " See also, *Arkansas State Highway Commission v. Watkins*, 229 Ark. 27, 313 S.W.2d 86; *Northern Indiana Public Service Co. v. McCoy*, 239 Ind. 301, 157 N.E.2d 181; *State v. Malecker*, 265 Minn. 1, 120 N.W.2d 36; *Tarricone v. State*, 23 App. Div. 2d 804, 258 N.Y.S.2d 57; *Barnes v. North Carolino State Highway Commission*, 250 N.C. 378, 109 S.E.2d 219; *State v. Deal*, 191 Ore. 661, 233 P.2d 242; *City of Caldwell v. Roark*, 92 Idaho 99, 437 P.2d 615; 27 Am. Jur.2d *Eminent Domain* § 435; 29A C.J.S. *Eminent Domain* § 160; 1 *L. Orgel, Valuation Under the Law of Eminent Domain* § 30 (2d ed. 1953).

█ The Schulhoffs stress as important the testimony that to divide and sell Parcel No. 320 as building sites to individual purchasers would not require recordation of a subdivision plat because the parcel could have been divided into smaller parcels and sold by metes and bounds. This fact, however, is not relevant. The land is

still being hypothetically divided into smaller tracts and the value of the total parcel is still being predicated on the aggregate of the hypothetical value of individual but smaller tracts of ground and not on the property as a whole. Valuation must be based on what a willing purchaser will pay for the whole at the time of the taking and not what a number of purchasers might be induced to pay in the future for the land in smaller parcels. See *Forest Preserve District v. Wing,* 305 Ill. 194, 137 N.E. 139; *Utah Road Commission v. Hansen,* 14 Utah 2d 305, 383 P.2d 917.

II.

The State's argument on a tendered instruction asking the court to direct the jury to disregard the valuations expressed by the Schulhoffs' appraiser need not be discussed in view of our holding on the question of the admissability of such evidence. Upon retrial, since valuations based on the aggregate values of individual hypothetical lots would be excluded, the instruction would be unnecessary. The instruction given on the measure of compensation was correct, but in view of the evidence which the court erroneously admitted it was difficult for the jury to apply it. It read:

"You are instructed that in determining and allowing the fair, cash market value you are not to allow for any speculative values. You should consider the condition and surroundings of the property in arriving at the market value of the property being acquired.

"In determining the cash value, the most advantageous use to which the property may reasonably be applied may be considered. Any reasonable future use to which the land may be adapted or applied by men of ordinary prudence and judgment may be considered insofar only as it may assist you in arriving at the market value. The owners are entitled to have considered the most advantageous use in the future to which the land may be reasonably applied not with the view of allowing them for speculative or prospective damages or values,

but only as such evidence may bear upon, affect or assist you in arriving at the market value.

"It is your duty to find and allow the market value of the property being taken.

"After considering any and all reasonable uses to which the property may be put in the future, the question is, taking all things into consideration, *what is the market value, not what will or may be its value later on account of some uses to which it may be put in the future.*" (Emphasis added.)

## III.

The Schulhoffs first assign as cross error the trial court's ruling excluding from evidence the sales of individual lots included within recorded subdivision plats as the basis of comparable sales.

Evidence of the price paid for similar property in a voluntary sale is admissible on the question of value of the property condemned, provided the properties sold are similar in locality and character to the property in question and not so far removed in point of time to make a comparison unjust or impossible. Whether the properties are sufficiently similar to be of aid to the jury in fixing the value of the property condemned necessarily rests largely in the sound discretion of the trial court which will not be interfered with unless abused. *Epstein v. City of Denver,* 133 Colo. 104, 293 P.2d 308; *McNulty v. Bobson,* 117 Colo. 336, 187 P.2d 590; *Wassenich v. City of Denver, supra;* 27 Am. Jur.2d *Eminent Domain* § 429; Annot., 85 A.L.R.2d 110.

The trial court did not err in excluding this evidence. The sales of property which the Schulhoffs contend were similarly situated and should have been admitted all involved individual sites within a platted subdivision whereas Parcel No. 320 was an undivided and unplatted tract of land. It follows from our holding in this opinion that since Schulhoffs' appraisers should not have been permitted to testify as to the value of Parcel No. 320 by hypothetically dividing it into smaller

building sites and adding the values of the building sites together to arrive at the value of the whole parcel, testimony as to the prices paid for similar building sites is equally objectionable as being speculative. *State Road Commission v. Ferguson,* 148 W. Va. 742, 137 S.E.2d 206.

In passing on the degree of comparability of the sales which the Schulhoffs attempted to introduce into evidence to Parcel No. 320, the trial court correctly ruled: "* * * [T]he Court does not consider platted subdivisions, which likely have streets, possibly alleys and curbs and gutters, paved streets, utilities, grading and other matter which are usually in subdivisions, comparable to the property in question in this case, and therefore refuses to permit testimony as to the value of those lots, even though they are called comparable lots.
"* * *

"* * * [T]here are so many elements in subdivisions that aren't in unimproved property that it is difficult to evaluate or compare the two."

The authorities support the trial court's ruling. We quote with approval the following language of the court in *State Roads Commission v. Wood,* 207 Md. 369, 114 A.2d 636, apropos of the general rule:
"* * * The vice in comparing subdivided land and unsubdivided land lies in the fact that the comparison is between a wholesale and a retail price for the price of the platted lots includes the expense of subdividing and the promotional and sales costs of moving the individual lots. * * *"

Similar expressions are found in the following cases: *Southern Electric Generating Co. v. Leibacher,* 269 Ala. 9, 110 So.2d 308; *Waukegan Park District v. First National Bank,* 22 Ill.2d 238, 174 N.E.2d 824; *Puerto Rico Housing Authority v. Viera Echegaray,* 72 P.R.R. 683; *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808; *State Road Commission v. Ferguson, supra. See* Annot. 85 A.L.R.2d 110 and 5 Nichols, The Law of Eminent Domain § 21.31 [3] (3d ed. rev. 1962).

## IV.

The Schulhoffs assign as cross error the refusal of the trial court to strike the testimony of one of the state appraisers. They contend that this appraiser used the "before and after" rule, *i.e.*, that he determined the value of the entire tract before the taking, then determined the value of the residue after the taking, using the difference between the two as the basis for determining the compensation to be paid to the Schulhoffs. If the estate appraiser had so testified, we would agree with this assignment of cross error. However, we find from the record that the alleged error, as set forth in defendant in error's brief is counsel's interpretation of the testimony.

Pursuant to C.R.S. 1963, 50-1-17 and C.R.S. 1963, 50-1-18, the measure of compensation to be paid in a case of this kind is the actual value of the property taken. Our reading of the record discloses that the state appraiser, using acceptable appraisal methods, including comparable sales in the area, determined the per-acre value of the property of the Schulhoffs and stated that in his opinion the property taken had a value of $4,550 per acre, but because the property acquired by the state was a little over three-quarters of an acre, the value of the parcel taken was $3,450.

We note from the transcript that on cross-examination there was considerable colloquy between the Schulhoffs' counsel and the witness with reference to the residue, and that when pressed the witness did state that he did not believe the residue had been diminished in value. This response to questions asked on cross-examination was in accordance with the stipulation of the parties that there had been no damage to the residue. If the Schulhoffs are unhappy with the response to persistent cross-examination, they opened the door and cannot assign as error answers given in response to the cross-questioning.

The judgment is reversed and the cause remanded for new trial in conformity with this opinion.