583 P.2d 296 (1978)
DENVER URBAN RENEWAL AUTHORITY, a body corporate and politic of the State of Colorado, Petitioner-Appellee and Cross-Appellant,
v.
Maurice HAYUTIN, Respondent-Appellant and Cross-Appellee.
No. 76-295.
Colorado Court of Appeals, Division III.
April 27, 1978.
Rehearing Denied June 29, 1978.
Certiorari Granted August 28, 1978.
*298 Benedetti, Opperman & Martinez, P. C., Marlin D. Opperman, Denver, for petitioner-appellee and cross-appellant.
Gelt & Webster, P. C., Louis E. Gelt, Richard H. Goldberg, Denver, for respondent-appellant and cross-appellee.
VanCISE, Judge.
Petitioner, Denver Urban Renewal Authority (DURA), instituted this eminent domain proceeding in the trial court in November 1974 to acquire real property, consisting of 26,294 square feet of land and five buildings located at 775 Champa Street within the Aurari Urban Renewal Project, and owned and used by respondent, Maurice Hayutin (owner), in his auto parts business. Following a hearing before a commission of three freeholders on the issue of valuation, the commission filed a certificate of ascertainment and assessment which determined the reasonable market value of the property as of January 3, 1975, to be $170,000, and judgment was entered thereon. The owner appeals the denial of certain costs, expenses, and interest. DURA cross-appeals the amount of the valuation award. We reverse the judgments on the valuation award and the interest, and remand the cause with directions as to the award, costs, and interest.

THE VALUATION AWARD
DURA bases its appeal on the reception of certain evidence, over objection, from the three witnesses who testified for the owner as to the valuation of the propertythe owner himself, his wife, and a real estate appraiserand on the denial of its motions to strike the testimony of each.

I
DURA contends that the commission erred in allowing the owner's real estate appraiser, admitted to be an expert, to testify to allegedly comparable sales without complying with § 38-1-118, C.R.S.1973, and then to give an opinion as to value of the subject property ($215,000) based on these other sales.
Section 38-1-118, C.R.S.1973, provides:
"Any witness in a proceeding . . . wherein the value of real property is involved, may state the consideration involved in any recorded transfer of property, otherwise material and relevant, which was examined and utilized by him *299 in arriving at his opinion, if he has personally examined the record and communicated directly and verified the amount of such consideration with either the buyer or seller. Any such testimony shall be admissible as evidence of such consideration and shall remain subject to rebuttal as to the time and actual consideration involved and subject to objections as to its relevancy and materiality." (emphasis added)
The appraiser indicated that the market data approach was the most credible indication of value for the subject property. In arriving at his opinion as to the market value, he considered ten land sales and six improved property sales, and testified to the sale price of each. In at least four of the land sales he did not personally verify the sale price with either the buyer or the seller. Of the six improved property sales, two were, and four were not, personally confirmed by the witness. He stated that most of the sales, if not personally verified by him, had been checked by someone on his staff. On that basis, the commission overruled DURA's objections and denied its later motion to strike the appraiser's testimony as to the sales not personally confirmed by him and his opinion as to value based on those sales.
In City of Denver v. Quick, 108 Colo. 111, 113 P.2d 999 (1941), an appraisal witness in a condemnation case was prohibited from testifying as to comparable sales data because it was hearsay. Thereafter, what is now § 38-1-118, C.R.S.1973, was enacted by the General Assembly. By this statute a legislative exception to the hearsay rule was created, but it is limited in its application. The use in the statute of the terms "personally" and "communicated directly" do not mean by or through someone other than the witness.
Quick has never been overruled, and under it other sales price testimony not rendered admissible under the terms of the statute must be excluded as hearsay. Therefore, the sales data based on verification by others was inadmissible, and the opinion testimony, being based at least in part on this evidence, should have been stricken.
Since the commission's ascertainment of value ($170,000) appears to have been based primarily on the valuation testimony of the two appraisers, $132,000 by DURA's and $215,000 by the owner's appraiser, receiving and refusing to strike the owner's appraiser's opinion testimony was reversible error.
Since the other issues raised on appeal may come up again on the retrial, we will address them at this time.

II
DURA asserts that the owner's opinion as to value ($250,000 to $275,000) was based upon improper considerations and therefore should not have been received in evidence. We agree.
Over DURA's objections, the owner was allowed to testify concerning his five year search for a replacement property, including his investigation of a number of properties that were on the market for sale. He was not permitted to relate the prices at which they were being offered, although he knew. He said that the information as to the asking prices for these properties assisted him in arriving at his conclusion or opinion as to what his own property was worth.
Also, over objections, the owner was allowed to testify to the $300,000 price he paid for the property purchased by him as a replacement for the property being taken, even though he admitted that it was not comparable. He stated that his experience in the acquisition of the new property helped him to determine the value of the old.
The general rule is that an owner may state his opinion of the reasonable market value of his own property without having to be qualified as an expert witness. DURA v. Berglund-Cherne Co., Colo., 568 P.2d 478 (1977); Board of Directors of the Baker Metropolitan Water & Sanitation District v. Calvaresi, 156 Colo. 173, 397 P.2d 877 (1965). However, an owner's opinion is *300 not admissible where it is based upon improper considerations. Testimony regarding the price paid for replacement property in a transaction that was not a comparable sale is incompetent. See Board of County Commissioners v. Vail Associates, Ltd., 171 Colo. 381, 468 P.2d 842 (1970); Department of Highways v. Schulhoff, 167 Colo. 72, 445 P.2d 402 (1968). And opinion testimony based almost entirely on the offering prices as distinguished from the sale prices of replacement properties and on the price paid for a non-comparable property is inadmissible. See City & County of Denver v. Hinsey, 177 Colo. 178, 493 P.2d 348 (1972); Ruth v. Department of Highways, 145 Colo. 546, 359 P.2d 1033 (1961); Dandrea v. Board of County Commissioners, 144 Colo. 343, 356 P.2d 893 (1960).

III
DURA further contends that the commission erred in allowing the owner's wife, who had no interest in the subject property and who was not qualified as an expert, to give her opinion as to its value. Again, we agree.
The owner's wife was allowed to testify, over objections, to discussions with her husband and her efforts in assisting him in finding or locating other properties in which to relocate his business. Then, stating that she "formed an opinion by learning what others were asking for property," she stated her opinion of value ($250,000 to $275,000).
For the reasons stated in part II above, even more applicable when the witness is neither an expert nor an owner, her opinion testimony should have been stricken. See also Baker Metropolitan Water & Sanitation District v. Baca, 138 Colo. 239, 331 P.2d 511 (1958).

IV
DURA also contends that the commission erred when if refused to permit DURA's counsel to cross-examine the owner and his appraisal witness as to their competency to pass on the value of the subject property prior to receiving their opinions as to valuation. Similarly, DURA claims error on the occasions when the commission denied its request to voir dire the appraisal witness as to the comparability of certain sales before allowing testimony concerning these sales prices to be admitted into evidence.
When timely objections and requests to voir dire have been made, it is preferable for the questions of competency to testify or comparability of properties to be resolved prior to admitting the testimony. See DURA v. Berglund-Cherne Co., supra; Wassenich v. Denver, 67 Colo. 456, 186 P. 533 (1920). Admitting evidence conditionally, subject to later cross-examination and motion to strike, although within the discretion of the court, is bad practice. McKee v. Bassick Mining Co., 8 Colo. 392, 8 P. 561 (1885); Tourtelotte v. Brown, 4 Colo. App. 377, 36 P. 73 (1894). Once the testimony has been heard, it is difficult for the fact-finder to erase it from mind and memory.

V
DURA also objects to two instructions given by the court to the commission, one providing that the owner's wife is allowed to give her opinion as to market value, and the other regarding direct and circumstantial evidence. The first was wrong on the present record, and the other was irrelevant in this case where the issue is not liability but valuation of the property. Neither should be given on retrial unless required because of additional evidence not now in the record.

COSTS AND INTEREST
Subsequent to the valuation hearing before the commission, the trial court conducted a two-day evidentiary hearing as a means of determining the propriety and reasonableness of the various items of costs and interest claimed by the owner. Findings and conclusions were then announced, and judgment was entered in favor of the owner in a total of $4,597.37 costs and $3,213.46 interest. The owner claims he should have been awarded the remaining items set forth in his bill.
*301 Under the Colorado Constitution, Art. II, Sec. 15, the taking of private property "without just compensation" is prohibited. The phrase "just compensation" has been interpreted to mean not only payment to the owner of the market value of his property, but also payment of his costs. However, "costs" includes only those items usually taxed as costs and does not include any and all expenses which an owner may see fit to incur in preparing for and in presenting his side of the case. Leadville Water Co. v. Parkville Water District, 164 Colo. 362, 436 P.2d 659 (1967).
The owner included in his bill of costs the witness, mileage, and service of process fees for eight witnesses, some of whom were subpoenaed more than once. The court allowed the fees for five of them, selecting generally the ones involving the greatest expense so as to provide the largest reimbursement to the owner. No showing was made that more were necessary, nor did the owner make any specific request for certification of more than the statutory four. See § 13-16-112, C.R.S.1973. Most of the witnesses subpoenaed were not even called to testify. Accordingly, the rejection of the claim for fees of the other witnesses did not represent an abuse of the trial court's discretion. Lamont v. Riverside Irrigation District, 179 Colo. 134, 498 P.2d 1150 (1972).
The owner asked that the expenses incident to his taking the depositions of DURA's two endorsed expert appraisal witnesses be taxed as costs. These expenses included witness, mileage and service fees, the appearance fees for the reporter, and the fees for the expert witnesses. He contends that certain evidence he presented indicated bad faith on behalf of DURA in its pretrial discovery procedures and trial tactics, as a result of which he was forced to take these depositions in order to be properly prepared for trial, and it was manifestly unjust not to reimburse him for these expenses.
However, the trial court was familiar with the circumstances and the so-called evidence, most of which was merely argument of counsel. The disallowance of the deposition costs was in effect a finding that the evidence did not support the claim. We agree with the trial court. Absent circumstances constituting "manifest injustice" as contemplated in C.R.C.P. 26(b)(4)(C), the general rule on deposition costs applies. "[T]aking depositions of witnesses in preparation for trial is something in the nature of a luxury, and . . . one who avails himself of this procedure does so at his own expense." Morris v. Redak, 124 Colo. 27, 234 P.2d 908 (1951).
The owner asked for his total outlay for fees and expenses of his appraisal expert witness, $6,624.44, to be awarded as costs. Testimony was presented by both sides as to the reasonable value of the expert's services during the preparatory, the pretrial, and the trial periods. The court found the full amount charged for the initial workup and report and for trial time to be reasonable, considered three days of pretrial time to be sufficient (with any additional time for this to be unreasonable as a charge against the opposing party), and, accordingly, approved $4,450 of his fees and expenses.
The statement of the Court in Leadville Water Co. v. Parkville Water District, supra, is dispositive of the owner's claim for the total witness expense:
"We cannot subscribe to the proposition that a party to any litigation shall have a free hand in the employment of expert witnesses and charge his adversary with the costs so incurred. There is no such unbridled authority. While the statute [§ 13-33-102(4), C.R.S.1973] allows expert witness fees, the property owner will not be fully indemnified for any unusual compensation which he might choose to pay his expert witnesses. The awarding of expert witness fees is limited, being circumscribed by a rule of reason, viz., sound judicial discretion. . . . We hold that in the exercise of that discretion, the trial court in this case was not bound by any contract for compensation which was entered into between the company and the experts.

*302 "When we have before us the finding of a trial judge who had the opportunity to evaluate the services of the experts based upon all the evidence before him and arrive at a fair conclusion of their reasonable worth, we do not interfere with his finding."
See to the same effect, Lamont v. Riverside Irrigation District, supra.
The owner also claimed error in the disallowance of the item in his bill of costs for attorney fees, $16,433.75. He admits that in the past attorney fees have not been allowed as costs in condemnation actions, (citing Leadville Water Co. v. Parkville Water District, supra, and other cases), but asks this court in effect to ignore these decisions. A similar argument was made in Leadville Water Co. to the Supreme Court, which could have overruled the earlier cases but chose not to. This court must follow Leadville Water Co., and the general rule adhered to therein.
The trial court assessed against DURA interest at six per cent on $50,000 (the $170,000 award less $120,000 paid into the registry by court order January 3, 1975) from January 3, 1975, to January 29, 1976 (the date of the award), a total of $3,213.46. The owner contends he was entitled, in addition, to interest at six per cent on the entire $170,000 award from November 15, 1974, to January 3, 1975. We do not agree.
Section 38-1-105(6)(a), C.R.S.1973, specifies that the court may authorize the petitioner to take possession of and use the subject property if the petitioner pays into court a sum determined by the court to be sufficient. Section 38-1-114, C.R.S.1973, states that "[t]he right to compensation and the amount thereof shall be determined as of the date the petitioner is authorized by agreement, stipulation, or court order to take possession . . . ." Section 38-1-116, C.R.S.1973, provides in pertinent part:
". . . [W]here possession of the property has been previously taken by the petitioner [the court] shall add to the amount of any such award interest at the rate of six percent per annum on and after the date of such possession until the date such award of the commission . . is filed with the clerk of the court. No interest shall be allowed on that portion of the award which the owner . . . received or could have received as a partial payment by withdrawal from the deposit . . .."
Premising its order on a stipulation of the parties, the court ordered, on December 31, 1974, that DURA "shall have the full right of possession and use . . . of the . . . property effective as of November 15, 1974, . . . following the deposit . . . of the . . . sum of $120,000 with the clerk of this court." Both parties admit that the money was deposited with the clerk January 3, 1975. That date became the date of taking as a determinative evaluation date in establishing the reasonable market value of the subject property. And, since the authorization to take possession was contingent on the deposit, the date of possession for purposes of entitlement to interest on the award was the date of deposit, January 3. See Swift v. Smith, 119 Colo. 126, 201 P.2d 609 (1948).
The owner finally contends that, like any other judgment creditor, the unpaid portion of the judgment draws interest at eight per cent from the date of entry of the judgment (here the date of filing of the certificate of ascertainment by the commission) until paid. See § 5-12-102, C.R.S.1973 (1976 Cum.Supp.). We agree.
There is no conflict between § 38-1-116, C.R.S.1973, which provides for six per cent interest from the date of possession until the date the commission's award is filed with the court, and the general interest statute pertaining to interest thereafter. Once the amount of the valuation award has been ascertained, the result is like any other judgment. And, since the condemnation statutes are silent on the matter of interest for the period after judgment, the general statute on interest applies.
The judgment entered on the commission's certificate of ascertainment is reversed, *303 and the cause is remanded for a new determination of market value. Inasmuch as there will ultimately be an award to the owner, and since the costs judgment was not appealed by DURA, the judgment for the owner's costs through the first trial stands. The judgment for interest is set aside, with interest to be recomputed when the new valuation award is certified by the commission to the court. Each party shall pay his or its own costs on this appeal.
PIERCE and RULAND, JJ., concur.