Elizabeth HERRING and Cameron Thomas Herring, Petitioners,

v.

PLATTE RIVER POWER AUTHORITY, a political subdivision and governmental entity of the State of Colorado, Respondent.

No. 85SC393.

Supreme Court of Colorado, En Banc.

Nov. 10, 1986.

Rehearing Denied Dec. 8, 1986.

Gorsuch, Kirgis, Campbell, Walker and Grover, Vicki J. Fowler, Malcolm M. Murray, Denver, for petitioners.

Fischer, Brown, Huddleson & Gunn, Charles R. Huddleson, Fort Collins, Bryan W. Blakely, Fort Collins, for respondent.

LOHR, Justice.

In this eminent domain case, Platte River Power Authority (Platte River) asserts that the district court erred in its assessment of damages to that portion of the respondents' property not taken by condemnation. The district court awarded $65,000 to respondents Elizabeth Herring and Cameron Thomas Herring for damages resulting to the remainder of their property when part of the property was taken by Platte River for the construction of an electrical substation. While the appeal was pending in the Colorado Court of Appeals, we granted a petition for certiorari filed by the Herrings pursuant to C.A.R. 50. We accepted jurisdiction because the primary issue raised on appeal by Platte River—whether a landowner who loses a portion of land by condemnation is entitled to compensation for loss of value of the property remaining when that reduction in value is based on impairment of view and other aesthetic damage—was already before this court in two other cases, *La Plata Electric Ass'n, Inc. v. Cummins*, 728 P.2d 696, (Colo. 1986), and *Bement v. Empire Electric Ass'n, Inc.*, 728 P.2d 706 (Colo.1986). Our opinion today in *La Plata Electric Ass'n, Inc. v. Cummins*, holds that property owners who lose a portion of their property by condemnation are entitled to present evidence concerning, and receive compensation for, any diminution of the market value of the remainder of the property caused by the taking. Our holding in *La Plata* resolves the primary issue raised in the present case. Platte River also contends that the trial court erroneously awarded damages to the Herrings based on an appraiser's use of noncomparable sales to determine the reduction in market value of the remainder. We disagree and therefore affirm the judgment.

I.

The basic facts either were stipulated to by the parties or are undisputed. In April 1982, Platte River, a governmental authority organized for the purpose of developing and providing electrical services to contracting municipalities, filed a petition to condemn 6.645 acres of land for the purpose of constructing an electrical substation. The land to be taken was part of 98 acres owned by the Herrings in Larimer County just outside of the western city limits of Fort Collins. By stipulation, only 89 of the 98 acres were to be considered in the condemnation proceeding; the remaining area underlies a reservoir. The Herrings used the property for agricultural purposes, but both parties agreed that the highest and best use of the property was for residential lots of 2.5 acres each. The market value of this property was stipulated to be $5,000 per acre at the time of taking.

The land to be taken for the substation was a rectangle which bordered on the eastern boundary of the Herrings' property. Platte River also condemned two easements for transmission lines across small triangular parcels on the eastern boundary of the property, adjoining the substation site and totalling 0.721 acres. The parties stipulated that the value of the property rights taken, including the value of improvements made by the Herrings to the taken land, totalled $42,355. The only issue left unresolved by stipulation was the amount of damages, if any, to the remainder of the 89 acres. Prior to the hearing on this issue, Platte River took possession of the property and constructed the substation.

The valuation issue was tried to the court without a jury. At the valuation hearing, Cameron Herring testified that in his opinion, the unsightliness and impairment of view caused by the construction of the substation adversely affected 55 acres of the remaining property and reduced its value by approximately $125,000. An appraiser

appearing on behalf of the Herrings testified that in his opinion, the construction of the substation resulted in the reduction of the value of 43 of the remaining acres by $1,500 per acre, or a rounded total of $65,-000. The appraiser concluded that the reduction in value was caused by the "nonharmonious" character of the substation in its setting within the rest of the property, and that unsightliness and loss of view were factors in the disharmony.

Of particular relevance to this appeal, the appraiser testified that he calculated the reduction in value in part by the use of what he called a "paired analysis" method. That method involved the review of market sales of pairs of properties within two subdivisions. The appraiser paired properties within each subdivision on the basis that they were similar to each other except for the fact that one was near an electrical substation and the other was not. From this review, the appraiser concluded that the presence of a substation caused a measurable reduction in the value of the property in proximity to the substation when compared to the value of the other property in each analyzed pair. He further concluded that this "trend," i.e., the degree to which value is reduced by the presence of a substation, could be applied, with certain adjustments, to the portion of the Herrings' property affected by the construction of the substation. This was true, according to the appraiser, even though the sales prices and uses of the properties within the two subdivisions had no relation to the value and prospective use of the Herrings' property. The subdivided properties and the Herrings' property were admittedly noncomparable.[1]

Platte River objected to the appraiser's testimony on the ground that it was based on noncomparable sales. Platte River further objected to any evidence from Cameron Herring or the appraiser concerning a reduction in value of the remainder to the extent that the reduction was based on

unsightliness and loss of view. An appraiser appearing on behalf of Platte River testified that the construction of the substation reduced the value of the 16 acres of land immediately surrounding the substation by a total of $7,800. The appraiser testified, however, that this diminution of value, caused mainly by the visual impact of the substation, was not legally compensable in his opinion.

The district court rejected Platte River's objections and found that the total damage to the remainder of the property was $65,-000, the amount testified to by the appraiser for the Herrings. The district court included that amount in entering judgment for the Herrings, and Platte River appealed.

## II.

■ "Private property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const., art. II, § 15. When a portion of a landowner's property is taken, just compensation includes compensation for damage to the remainder of the property as well as compensation for the actual taking. The proper measure of compensation for damage to the remainder is the reduction in the market value of the remaining property that is caused by the taking. *La Plata Electric Ass'n, Inc. v. Cummins*, 728 P.2d 696, 698 (Colo.1986). In the present case, the district court found that the value of the remainder of the Herrings' property had been reduced by $65,000 as a result of the taking. Platte River contends that the evidence shows that any damage to the remainder of the Herrings' property has been caused by the loss of view and the unaesthetic presence of the substation and that, as a matter of law, this type of damage is not compensable. According to Platte River, this is because such damages are experienced by the public in general and are not unique or special to the landowner.

1. One of the pairs involved fourplex lots in a mixed density residential area; another in-     volved lots in a "high-tech" industrial park.

We rejected this argument in *La Plata Electric Ass'n, Inc. v. Cummins.* We held that when a portion of a parcel of land is taken by condemnation, the landowner is entitled to receive compensation for *all* damages to the remainder that are the natural, necessary and reasonable result of the taking, as measured by the reduction of the value of the remaining property. 728 P.2d at 700. Our holding in *La Plata* is dispositive of this issue raised by Platte River.

### III.

Platte River argues that the appraiser for the Herrings based his appraisal upon sales of properties that were not comparable to the Herrings' property, and for that reason, his appraisal was not competent evidence of the value of the remainder. Platte River's argument misperceives both the nature of the analysis used by the appraiser for the Herrings and the requirements of the law.

Under the "comparable sales" approach, an appraiser determines the value of the property under consideration by matching that property with comparable properties that recently sold on the open market. We have recognized that "the comparable sales approach generally provides the best evidence of value." *Denver Urban Renewal Authority v. Berglund-Cherne Co.*, 193 Colo. 562, 565, 568 P.2d 478, 480 (1977). However, evidence of the price paid for other properties is admissible only if the properties sold "are similar in locality and character to the property in question and not so far removed in point of time to make a comparison unjust or impossible. Whether the properties are sufficiently similar to be of aid to the jury in fixing the value of the property condemned necessarily rests largely in the sound discretion of the trial court which will not be interfered with unless abused." *Dept. of Highways v. Schulhoff,* 167 Colo. 72, 80, 445 P.2d 402, 406 (1968).

In *Dept. of Highways v. Schulhoff,* we held that property in platted subdivisions generally is not comparable to unplatted land.[2] Thus, the sales of subdivided land cannot be used under the comparable sales method to determine the value of unsubdivided property. 167 Colo. at 80–81, 445 P.2d at 406–07. *Accord Board of County Commissioners v. Vail Associates, Ltd.*, 171 Colo. 381, 389–91, 468 P.2d 842, 846–47 (1970). If the Herrings' appraiser had determined the value of their remainder simply by relying on the sales prices of the subdivided properties as representing the value of the Herrings' unsubdivided property, we would agree with Platte River that the evidence would be irrelevant and inadmissible under *Schulhoff.*

However, the appraiser did not compare the sales prices of the properties within the subdivisions to the value of the Herrings' property, and he recognized that the subdivided properties were not comparable to the Herrings' property for that purpose. Rather, the appraiser compared sales of properties *within* each of the subdivisions, properties that were generally similar in all respects except, according to the appraiser, that one parcel of each pair was visually and aesthetically affected by the presence of an electrical substation. From these "paired analyses" the appraiser testified that he determined the degree to which a parcel of land was affected by the presence of a substation. The appraiser then applied the reduction factor so derived, with certain adjustments reasonably explained by the appraiser, to the agreed value per acre of the subject property to determine the damage caused to that portion of the Herrings' property visually and aesthetically affected by the construction of the substation.

We see nothing intrinsically improper in the analytical method utilized by the appraiser. Platte River points to nothing in

---

**2.** Part of the basis for our conclusion was that platted subdivisions "likely have streets, possibly alleys and curbs and gutters, paved streets, utili-ties, grading and other matter which are usually in subdivisions." 167 Colo. at 81, 445 P.2d at 407.

the record or in the law that establishes that the relative effects of electrical substations on subdivided land and on unsubdivided land are sufficiently dissimilar so that a determination of effect based on this approach must be considered irrelevant as a matter of law. In *City of Los Angeles v. Retlaw Enterprises, Inc.*, 16 Cal.3d 473, 128 Cal.Rptr. 436, 546 P.2d 1380 (1976), the California Supreme Court affirmed a trial court decision to admit "trend" evidence of an analogous nature in a condemnation proceeding. The court upheld the admission of evidence of a trend in sales prices of noncomparable neighboring properties. The court concluded:

> Our decision should not be construed to hold that price-trend data based on dissimilar property are, as a rule, relevant. We reach a more modest conclusion: such evidence *may* be relevant. The trial court has considerable discretion to assay the relevance of proffered evidence. Consequently, the mere fact that a witness testifies that he thinks evidence of price trends for dissimilar property will serve to illuminate the valuation of the subject property will not insure the admissibility of such evidence. The trial court must consider the objection of the opposing party and admit the evidence only if it concludes that it has probative value. We cannot conclude that the trial court abused its discretion in the present case by determining that the price-trend data shed some light upon the value of the subject property.

*Id.* 128 Cal.Rptr. at 445, 546 P.2d at 1389 (footnote omitted; emphasis in the original). We agree with and adopt this standard of review. Here, in the absence of anything in the record undermining the foundation for the appraiser's testimony that the effect of a substation on the value of the subdivided properties was sufficiently similar to the effect of the construction of the substation on the Herrings' property so as to be of use in calculating the reduction in value of the Herrings' remainder, we conclude that the trial court did not abuse its discretion in admitting this evidence.

The judgment of the district court is affirmed.

ROVIRA, J., dissents.

ERICKSON and VOLLACK, JJ., join in the dissent.

ROVIRA, Justice, dissenting:

For the reasons set forth in my dissent to *LaPlata Electric Ass'n v. Cummins*, 728 P.2d 696 (Colo.1986), I respectfully dissent.

I am authorized to say that ERICKSON and VOLLACK, JJ., join in this dissent.