The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 9, 2022

## 2022COA63

**No. 20CA2013, *CORE Electric Cooperative v. Freund Investments, LLC* — Eminent Domain — Condemnation — Evidence Concerning Value of Property; Evidence — Hearsay Exceptions — Public Records and Reports**

In this condemnation case, a division of the court of appeals determines that comparable sales that are not verified in compliance with section 38-1-118, C.R.S. 2021, may be admissible under the subsequently adopted hearsay exceptions under CRE 803. Section 38-1-118 provides for the admission of evidence of property values in eminent domain proceedings where the witness "has personally examined the record and communicated directly and verified the amount of such consideration with either the buyer or seller." As a matter of first impression, the division concludes that nothing in the language of section 38-1-118 directly addresses the exclusion of evidence of comparable sales. Thus, the hearsay

exceptions under CRE 803 are independent and alternative methods to section 38-1-118 for the admission of hearsay evidence of the value of comparable sales.

COLORADO COURT OF APPEALS     **2022COA63**

---

Court of Appeals No. 20CA2013
Arapahoe County District Court No. 18CV32213
Honorable Elizabeth Weishaupl, Judge

---

CORE Electric Cooperative, a Colorado cooperative electric association and nonprofit corporation, f/k/a Intermountain Rural Electric Association,

Petitioner-Appellee,

v.

Freund Investments, LLC, a Colorado limited liability company,

Respondent-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUSTICE MARTINEZ*
Fox and Gomez, JJ., concur

Announced June 9, 2022

---

Alderman Bernstein LLC, Jody Harper Alderman, Carrie S. Bernstein, Amanda A. Bradley, Denver, Colorado, for Petitioner-Appellee

Campbell Killin Brittan & Ray, LLC, Bruce E. Rohde, Margaret R. Pflueger, Denver, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1     In this condemnation case, respondent, Freund Investments, LLC (Freund), appeals the trial court's judgment entered on a jury verdict after a valuation trial.  Freund contends that the trial court erred by (1) finding its appraiser's valuation based on the subdivision development method inadmissible; and (2) excluding evidence of multiple comparable sales pursuant to section 38-1-118, C.R.S. 2021.  We affirm.

## I.     Background

¶ 2     Petitioner, CORE Electric Cooperative (CORE), formerly known as Intermountain Rural Electric Association, filed a petition in condemnation to acquire a nonexclusive permanent easement over 26.07 acres on the western-most edge of Freund's 2,722-acre property (the Property) to construct and operate a 115kV transmission line and ancillary distribution facilities extending from CORE's Kiowa substation to its Brick Center substation.  CORE also petitioned for a temporary construction easement over smaller portions of the Property.  At the time of the petition, the Property was primarily used for agricultural purposes.

¶ 3     The parties stipulated to CORE's immediate possession of the land subject to the easements and the case proceeded to a

1

valuation determination.  On receiving their appraisers' reports, the parties agreed that the highest and best use of the Property was to divide the Property into thirty-five- and forty-acre residential lots for future sale.

¶ 4    In determining the fair market value of the condemned property and any diminution to the fair market value to the residue, Freund's appraiser, Gregory Owen, used two methods of valuation — the sales comparison approach and the subdivision development method.

¶ 5    First, using the sales comparison approach, Owen relied on seven similar properties to arrive at a per-acre value of $2,000. Based on this per-acre value, he concluded that the permanent easement's value was $50,000.  He also concluded that the temporary construction easement's value was $5,000 based on similar temporary land leases.  Next, to calculate the loss in value to the Property caused by the condemnation, Owen adjusted the per-acre value by 5% and arrived at a per-acre value of $1,900 after condemnation.  After subtracting the post-condemnation value from the pre-condemnation value, he estimated the value of just

compensation under the sales comparison approach to be $330,000.

¶ 6     Second, using the subdivision development method, Owen first divided 1,766.27 acres of the Property into forty-four hypothetical forty-acre lots, each designated as premium or nonpremium lots based on the appeal and terrain of the lot (i.e., unobstructed views, creek access, trees), with a surplus of 955.68 acres.  Owen relied on ten similar properties to estimate the retail value of the twenty-eight premium lots to be $240,000 and the sixteen nonpremium lots to be $200,000.  Before condemnation, he projected that four to six lots would be sold each year over a ten-year period, with an increase in value to each lot by 3% annually to account for inflation, and then added the estimated value of all the lots together.  Next, relying on market data, he deducted the estimated costs of selling the lots, the estimated development costs, the estimated developer profit, and the estimated entrepreneurial incentive/discount rate from the total estimated value of the lots. After adding the value of the surplus with an estimated value of $2,000 per acre, Owen arrived at a total pre-condemnation value of $5,650,000 for the entire property.

¶ 7     After condemnation, Owen opined that six and one-half premium lots changed to nonpremium lots because the scenic view on those lots was obstructed by the transmission lines.  Due to the increase in nonpremium lots, Owen projected that two to six lots would be sold each year over an eleven-year period.  Using the same method to determine the pre-condemnation value, he arrived at a post-condemnation value of $5,380,000 for the entire Property.  He then subtracted the post-condemnation value from the pre-condemnation value to arrive at an estimated just compensation value under the subdivision method of $270,000.

¶ 8     Owen's final estimation for just compensation was $300,000, the median value of the two valuation methods.

¶ 9     CORE filed a motion in limine to exclude Owen's expert opinion and appraisal report in its entirety, arguing that his appraisal methodology was inadmissible under *Department of Highways v. Schulhoff*, 167 Colo. 72, 445 P.2d 402 (1968), and *Board of County Commissioners v. Vail Associates, Ltd.*, 171 Colo. 381, 468 P.2d 842 (1970).  The trial court found Owen's opinion using the subdivision development method inadmissible, reasoning that "the Colorado Supreme Court expressly forbids the method of

4

hypothetically carving a land into smaller tracts, estimating the value of each site and then adding the estimated values of all the sites together." *See Schulhoff*, 167 Colo. at 79, 445 P.2d at 406. But the court found Owen's opinion using the sales comparison approach admissible.

¶ 10     Before trial, CORE objected to the admission of Owen's opinion based on the sales comparison approach because Owen did not directly communicate with the buyer or seller of the seven comparable sales to verify the amount of consideration as required by section 38-1-118.  Freund argued that Owen was able to verify the amount of consideration for one comparable sale with the buyer.  Thus, the trial court noted that Owen's opinion on the remaining unverified sales would be admissible under the public records hearsay exception, CRE 803(8), because Owen confirmed the comparable sales' prices with the assessor's records and cross-checked the prices with the clerk and recorder records.

¶ 11     Nonetheless, the trial court excluded six out of the seven comparable sales as inadmissible under section 38-1-118. Applying "the statute as written," the court found that Owen personally examined the record for all seven comparable sales, but

he verified the amount of consideration for only one comparable sale with the buyer. Because the statute required both steps, only the one comparable sale that was verified with the buyer was admissible.

¶ 12 In light of the court's rulings, Owen's testimony at trial was limited to his valuation of the Property using the comparable sales approach based on one comparable sale. Owen also testified that the transmission lines impacted the view corridor of the Property and decreased to zero the value of the twenty-six acres on which the lines are located. Freund also called a second appraiser, W. West Foster, who was hired by CORE to appraise the Property. Foster used the comparable sales method to determine a per-acre value of $2,500. Because the nonexclusive easement was within the building setback area, Foster arrived at a 50% condemnation value of $32,588. He also valued the temporary easement at $693 with a 10% rental rate. The total compensation estimate based on Foster's appraisal was $33,300, with no damage to the residue.

¶ 13 In rebuttal, CORE's appraiser, Michael Earley, using the paired sales analysis approach to compare similar thirty-five-acre residential sites with and without transmission lines, testified that

the existence of transmission lines did not impact the fair market value of the residential sites.  Earley did not, however, conduct a valuation of the Property as a whole.

¶ 14    The jury awarded Freund $33,300 in damages for the condemned property and $50,000 in damages to the residue.

## II.    Subdivision Development Method

¶ 15    Freund first contends that the trial court erred by finding Owen's valuation using the subdivision development method inadmissible under *Schulhoff* and *Vail Associates, Ltd.*  Specifically, it argues that Owen's subdivision development method was not too speculative and that his methodology went to the weight of his testimony, not the admissibility.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 16    We review a trial court's evidentiary rulings for an abuse of discretion.  *Palizzi v. City of Brighton*, 228 P.3d 957, 962 (Colo. 2010).  A trial court abuses its discretion only if its decision was manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law.  *Bd. of Cnty. Comm'rs v. DPG Farms, LLC*, 2017 COA 83, ¶ 34.  "Whether the

7

court misapplied the law in making evidentiary rulings is reviewed de novo." *Id.*

¶ 17    "Private property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const. art. 2, § 15. "Just compensation is measured by the actual fair market value of the property, taking into consideration its most advantageous use at the time of the condemnation." *Palizzi*, 228 P.3d at 962.

¶ 18    The purpose of a valuation proceeding is to replicate the market. *Id.* at 963. In such a proceeding, the fact finder must determine how much a willing buyer would pay for the property if the owner had voluntarily offered the property for sale. *Id.* In doing so, the fact finder is permitted to consider the reasonable probability of a future use of a property to the extent that it relates to the value of the property. *Vail Assocs., Ltd.*, 171 Colo. at 388, 468 P.2d at 845 ("It is fundamental that evidence of the highest and best use to which the property may reasonably be applied in the future . . . is admissible to assist the commission or jury in arriving at the present cash market value of the property being taken."). Although the scope of admissible evidence of the value of the property is expansive, the trial court will not admit evidence of the

8

property's highest and best use that is too speculative. *DPG Farms, LLC*, ¶ 14 (citing *Schulhoff*, 167 Colo. at 77, 445 P.2d at 405).

¶ 19    One accepted method for proving the amount a willing buyer would pay for the property is the comparable sales approach (also referred to as the market data approach). *Denver Urb. Renewal Auth. v. Berglund-Cherne Co.*, 193 Colo. 562, 565, 568 P.2d 478, 480 (1977). Under that approach, the value of condemned property is determined, in part, by prices paid for similar property:

> Evidence of the price paid for similar property in a voluntary sale is admissible on the question of value of the property condemned, provided the properties sold are similar in locality and character to the property in question and not so far removed in point of time to make a comparison unjust or impossible.

*Schulhoff*, 167 Colo. at 80, 445 P.2d at 406.

¶ 20    It is also permissible and proper to show that a tract of land is suitable for subdivision into lots. *Id.* at 77, 445 P.2d at 405. However, it is improper to show the number and value of lots as separated parcels in an imaginary subdivision as an accomplished fact. *Id.*

¶ 21 For example, it is speculative, and therefore improper, to hypothetically carve up a tract of land into residential building sites, estimate the value of each site, and then add the values together. *Vail Assocs., Ltd.*, 171 Colo. at 388-89, 468 P.2d at 846 (citing *Schulhoff*, 167 Colo. at 74, 445 P.2d at 403). Under this method of valuation, the cost of improvement is conjectural and, thus, reflects prospective value rather than present fair market value.

## B. Analysis

¶ 22 Our supreme court's decisions in *Schulhoff* and *Vail Associates, Ltd.* generally prohibit use of the subdivision development method of valuation to determine the value of property that has not been subdivided. Owen valued the Property by dividing the Property into forty-four hypothetical residential lots, estimated the value of the individual lots, and then added the estimated values of all the lots sold over a ten- and eleven-year period with an annual inflation rate of 3%. Owen went another step further and deducted costs associated with developing the Property based on current market estimates.

¶ 23    Still, Freund contends that Owen's subdivision development method was admissible under *Board of County Commissioners v. Evergreen, Inc.*, 532 Colo. App. 171, 532 P.2d 777 (1974), because the valuation was based on predictable market values, making the subdivision "probable." Freund's reliance on *Evergreen,* however, is misplaced. The condemned property in that case was already platted and "already subdivided and presently for sale for residential purposes." *Id.* at 174, 532 P.2d at 779. Thus, the valuation of individual lots on the condemned property using the sale price of comparable lots was admissible. *Id.* at 176, 532 P.2d at 780. Here, at the time of condemnation, the Property was undeveloped land on which no measures had been taken to prepare for subdivided lots. Nor is there any evidence in the record that there was a timeframe for commencement of any work. Therefore, any valuation of hypothetical lots within a hypothetical subdivision on the Property is highly speculative, even if Owen's valuation was based on easily ascertainable market data. *See Vail Assocs., Ltd.*, 171 Colo. at 389, 468 P.2d at 846 ("The measure of compensation is not the aggregate of values of individual plots into which the tract taken could best be divided, but rather the value of the *whole tract*

11

as it exists at the time of the condemnation, taking into consideration its highest and best future use."). This is particularly true given that Owen assigned different, prospective values to the lots based on their premium status, estimated the number of lots sold each year over a ten- and eleven-year period, and increased the value of the lots by 3% each year for inflation.

¶ 24 To the extent that Freund contends that Owen was precluded from testifying about the impact the transmission lines had on particular portions of the Property, the record belies this contention. Owen testified that the twenty-six acres of condemned property, previously valued at $50,000, was valueless. Moreover, during cross-examination, CORE used Owen's grid of the hypothetical subdivision to confirm that Owen opined that six and one-half of the forty-four hypothetical lots would be directly impacted by the transmission lines.

¶ 25 Finally, contrary to Freund's contention, Earley did not use a similar methodology when creating his rebuttal report. Our supreme court has concluded that the use of the paired sales analysis approach is a proper method of valuation. *Herring v. Platte River Power Auth.*, 728 P.2d 709, 712-13 (Colo. 1986). Earley used

12

the same paired sales analysis approach the appraiser in *Herring* employed to determine whether the presence of transmission lines on a property reduced the value of the thirty-five-acre residential property within a subdivision when compared to the value of a neighboring residential property without transmission lines. From his "paired analyses," Earley opined that the presence of transmission lines did not affect the value of the properties. *See id.* at 711-12 ("[T]he appraiser compared sales of properties within each of the subdivisions, properties that were generally similar in all respects except, according to the appraiser, that one parcel of each pair was visually and aesthetically affected by the presence of an electrical substation."). Similarly, he did not compare the sales prices of the properties within the subdivisions to the value of Freund's property, nor did he make a valuation of the Property as a whole. *See id.* at 712.

¶ 26    Accordingly, the trial court did not err by finding Owen's valuation using the subdivision development method inadmissible.

### III.    Comparable Sales

¶ 27    Freund next contends that the trial court erred by excluding evidence of the unverified comparable sales because the comparable

sales prices were admissible under the hearsay exceptions for public records, CRE 803(8), and for records of documents affecting an interest in property, CRE 803(14). Although we agree that the hearsay exceptions apply to the admissibility of comparable sales in a condemnation case and that the trial court erred, we discern no reversible error.

### A.  Standard of Review and Applicable Law

¶ 28  Generally, trial courts have broad discretion to determine the admissibility of evidence. *Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 64. Here, however, this issue involves the court's interpretation and application of section 38-1-118, a question of law reviewed de novo. *See E-470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000).

¶ 29  "Our primary objective is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole." *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010). When construing eminent domain statutes, "[w]e construe such statutes narrowly and resolve ambiguities in favor of the condemnee landowner." *Id.*

¶ 30  As relevant here, section 38-1-118 provides that

> [a]ny witness in a proceeding under articles 1 to 7 of this title, in any court of record of this state wherein the value of real property is involved, may state the consideration involved in any recorded transfer of property, otherwise material and relevant, which was examined and utilized by him in arriving at his opinion, if he has *personally examined the record and communicated directly and verified the amount of such consideration with either the buyer or seller.* Any such testimony shall be admissible as evidence of such consideration and shall remain subject to rebuttal as to the time and actual consideration involved and subject to objections as to its relevancy and materiality.

(Emphasis added.)

## B. Analysis

¶ 31    Before the Colorado Rules of Evidence were adopted, section 38-1-118 was enacted to allow witnesses to testify about the value of real property based on evidence that would have been inadmissible under the hearsay rule in effect at that time. *Denver Urb. Renewal Auth. v. Huyatin*, 40 Colo. App. 559, 562, 583 P.2d 296, 299 (1978); *see also City of Denver v. Quick*, 108 Colo. 111, 116-17, 113 P.2d 999, 1002 (1941) (concluding that an appraisal witness's testimony in a condemnation case on comparable sales data was inadmissible hearsay evidence). The plain language of section 38-1-118 provides for the admission of testimony on the

value of comparable sales in a condemnation case when (1) the witness personally examined the record of the recorded transfer of the subject property; and (2) the witness directly communicates with the buyer or seller of that property to verify the amount of consideration. However, as discussed further below, nothing in the language of section 38-1-118 directly addresses the exclusion of evidence of comparable sales even though the section is not a vehicle for the admission of evidence of comparable sales unless the conditions are met.

¶ 32  A division of this court considered the admissibility of comparable sales that were not verified in compliance with section 38-1-118. In *Huyatin*, the division found that four out of the appraiser's six comparable sales were inadmissible because the appraiser did not personally verify the sale price with either the buyer or seller and the court's decision to admit the unverified sales was reversible error. 40 Colo. App. at 562, 583 P.2d at 299. Thus, the division held that comparable sales not verified in compliance with section 38-1-118 are inadmissible hearsay evidence. *See id.*

¶ 33  However, *Huyatin* was decided before the Colorado Rules of Evidence were adopted in 1979 and liberalized the admission of

hearsay evidence. We must, therefore, determine whether the hearsay exceptions under CRE 803 apply to the admission of comparable sales that were not verified in compliance with section 38-1-118. We conclude, for two reasons, that the hearsay exceptions in the rules of evidence apply to the admission of real property values in a condemnation case.

¶ 34    First, hearsay is inadmissible except as provided by the rules of evidence or by statute. CRE 802. Thus, section 38-1-118 is not the only method of admitting comparable sales data. For example, CRE 803(8) provides that,

> [u]nless the sources of information or other circumstances indicate lack of trustworthiness, [the admission of] records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report [is permitted].

¶ 35    CRE 803(8) is, therefore, a subsequently adopted independent and alternative method to section 38-1-118 for the admission of hearsay evidence. *See Margenau v. Bowlin*, 12 P.3d 1214, 1217 (Colo. App. 2000) (finding C.R.C.P. 32 as another method for admitting deposition testimony in addition to former testimony

exception to the rule against hearsay).  Where, as here, a witness's testimony on the value of real property is based on public records from an agency that has a duty to record and report transfers of a real property, evidence of the value of that property is admissible under CRE 803(8).

¶ 36    Second, "[w]e acknowledge that in the event of a conflict between a statute concerning a matter of substantive import and a rule of evidence, the statute will prevail over the rule."  *Montoya v. People*, 740 P.2d 992, 996 (Colo. 1987); *see also Town of Red Cliff v. Reider*, 851 P.2d 282, 284 (Colo. App. 1993) ("[T]o the extent that the statutory procedures [in eminent domain proceedings] differ from the procedures under the civil rules, the statute, not the rules, govern [sic].").  However, we do not read section 38-1-118 and CRE 803(8) as conflicting with each other.

¶ 37    Nothing in section 38-1-118 directly precludes the admission of evidence.  Section 38-1-118 does not provide that the evidence is admissible *only* if the witness has personally examined the record and communicated with the buyer or seller to verify the amount of the sale.  Nor does section 38-1-118 provide that it is the exclusive method of admitting evidence of comparable sales.  Rather, similar

18

to the hearsay exceptions under the rules of evidence, the statute provides for the admission of evidence that might otherwise be inadmissible hearsay.  Thus, we conclude from the plain language that the General Assembly did not intend for section 38-1-118 to have preclusive effect notwithstanding an alternative method of introducing evidence of comparable sales.

¶ 38  CORE contends, however, that CRE 1101(e) precludes the application of the rules of evidence to admit evidence of comparable sales.  Under CRE 1101(e), the Colorado Rules of Evidence apply in special statutory proceedings to the extent that matters of evidence are not provided for in the statute governing procedures in the statutory proceeding.  In cases applying CRE 1101(e), our supreme court has found that rule pertains only to the extent that the rules of evidence are in conflict with the statutory proceedings.  *See Pruett v. Barry*, 696 P.2d 789, 794 (Colo. 1985) (The rules of evidence "apply in 'special statutory proceedings' . . . to the extent that they are *not in conflict* with statutory requirements for such proceedings.") (emphasis added).  Further, a division of this court applied CRE 1101(e) because a statutory provision explicitly prohibited the admission of evidence.  *See Uptain v. Huntington Lab,*

*Inc.*, 685 P.2d 218, 221 (Colo. App. 1984) ("The Colorado Rules of Evidence, however, are not applicable if there is a specific statutory provision under a special statutory proceeding in effect which *prohibits* the admission of evidence.") (emphasis added), *aff'd*, 723 P.2d 1322 (Colo. 1986).  We have concluded, for the reasons stated above, that CRE 803(8) and section 38-1-118 are not in conflict with each other and that section 38-1-118 does not directly prohibit the admission of evidence.

¶ 39     Accordingly, we conclude that the trial court erred by excluding evidence of the comparable sales that Owen did not directly verify with the buyer or seller based on its erroneous finding that comparable sales data in a condemnation case are only admissible under section 38-1-118.

### C.     Harmless Error

¶ 40     Having concluded that the trial court erred by excluding the unverified comparable sales, we must determine whether the error warrants reversal.  We conclude that it does not.

¶ 41     We review errors in evidentiary rulings in civil cases for harmless error.  C.R.C.P. 61.  Under this standard, we will not disturb a judgment unless a court's error affected the substantial

20

rights of the parties. *Id.* An error affects a substantial right only if "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Bly*, 241 P.3d at 535 (quoting *Banek v. Thomas*, 733 P.2d 1171, 1178 (Colo. 1987)).

¶ 42 Freund contends that the exclusion of the unverified comparable sales was not harmless because Owen's credibility was diluted. However, based on the record before us, we conclude that the exclusion of this evidence did not substantially influence the outcome of the case.

¶ 43 Owen, like the other appraisers, testified about his experience and qualifications as an appraiser and he was qualified as an expert in appraisal work. Both Owen and Foster used the comparable sales method but they arrived at different per-acre values. The jury awarded Freund $33,300 for compensation of the condemned property. The award matches Foster's estimated value for compensation of the condemned property, which was based on a higher per-acre value than Owen's estimated value. Thus, it does not appear that excluding comparable sales offered to support

Owen's estimated value of the condemned property disadvantaged Freund.

¶ 44    In addition, the jury heard testimony from both Foster and Owen about the percentage of lost value to the condemned property. Owen disagreed with Foster's 50% loss of value and opined that the condemned property lost 100% of its value even though, as he acknowledged, Freund could still use the condemned property because the nonexclusive easement was located within the county's building setback. It is doubtful the excluded comparable sales would have bolstered Owen's opinion about the percentage loss of value.

¶ 45    Finally, Foster and Earley opined that there were no damages to the residue, while Owen believed that the biggest impact of the condemnation was on the residue. The jury's award of $50,000 in damages to the residue suggests Owen's opinion that there was damage to the residue was persuasive.

¶ 46    Under these circumstances, we conclude that the trial court's evidentiary error was harmless.

## IV.    Conclusion

¶ 47    The judgment is affirmed.

JUDGE FOX and JUDGE GOMEZ concur.